Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| HEIDI CORDERO, | **COMPLAINT** |
| Plaintiff, | |
| vs. | *(Jury Demanded)* |
| OLSON ASSOCIATES P.C. dba OLSON SHANER, RANDOLPH CHIP SHANER JR., ROB KOLKMAN, CONSTABLE KOLKMAN LLC, N.A.R. Inc., and JOHN DOES 1 -5, | Case Number: 2:23-cv-00756-JNP  Judge: Jill N. Parrish |
| Defendants. | |

### JURISDICTION AND VENUE

1.      This action arises from Defendants' violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692, *et seq.*, the Utah Consumer Sales Practices Act (UCSPA) Utah Code Ann. § 13-11-1 *et seq*.; common law fraud; and for deprivation of Plaintiff's civil rights under 42 U.S.C. § 1983.

2.      Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 1343(a)(3) which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and transactions giving rise to Plaintiff's claims occurred within this federal judicial district and because the Defendants

each conduct business and reside in the State of Utah within the meaning of 28 U.S.C. § 1391(b) and (c).

4.      This Court has personal jurisdiction over each of the Defendants in this case because they have continuous and systematic contacts with the State of Utah including, but not limited to, collecting debt in Utah from Utah residents, depriving Utah residents of their civil rights, residing in Utah, conducting business in Utah, enforcing consumer transactions in Utah, entering into agreements with Utah consumers, contacting and communicating with consumers in Utah and others by telephone, email, Internet communications, and other instruments of interstate commerce, and by availing themselves of the benefits of the Utah legal and judicial systems.

PARTIES

5.      The Plaintiff is a natural person who resides in Uintah County, Utah and was directly harmed by the Defendant's conduct and violations complained of herein.

6.      Defendant N.A.R. Inc., is a for-profit corporation regularly conducting business as a debt collection company in the State of Utah. Its principal place of business is 600 West 2200 South Suite 410, West Valley City, Utah 84119. As the assignee of the alleged debt with decision-making authority over the manner in which the alleged debt is collected, this Defendant formulated, directed, controlled, had the authority to control, or participated in the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

7.      Defendant Olson Associates P.C. dba Olson Shaner is a debt collection law firm regularly conducting business as a debt collection company in Utah. Its

principal place of business is 2200 South 1600 West #100, West Valley City, Utah 84119. As the law firm with decision-making authority over the manner in which the alleged debt is collected, this Defendant formulated, directed, controlled, had the authority to control, or participated in the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

8.      Defendant Randolph Chip Shaner Jr. is a lawyer and managing partner of Olson Associates P.C. dba Olson Shaner who resides and works in Utah. As managing partner of the law firm, Shaner regularly collects debt and plays an active role in the management of the firm and formulated, directed, controlled, had the authority to control, or participated in the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

9.      Defendant Rob Kolkman is an individual who holds himself out as a constable. He resides at 6928 West Hunter Valley Drive, West Valley, Utah 84128. As the managing member of Defendant Constable Kolkman LLC, Kolkman regularly collects debt and plays an active role in the management of the company. He also formulated, directed, controlled, had the authority to control, or participated in the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

10.     Defendant Constable Kolkman LLC is a limited liability company located at 6928 West Hunter Valley Drive, West Valley, Utah 84128. This company regularly collects debt and participated and played an active role in formulating, directing, and controlling the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

11.     The John Doe Defendants are individuals or companies whose true identities are unknown at this time. They each regularly collect debt and participated and played an active role in formulating, directing, and controlling the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

12.     Upon information and belief, one of the John Doe Defendants is the Utah Peace Officer's Association located at 5671 South Redwood Rd. #19, Salt Lake City, Utah 84123.

13.     Upon information and belief, one of the John Doe Defendants is Utah County Deputy Constable Andrew Collett.

14.      At all times relevant to this Complaint, each of the Defendants regularly collect debt, resided and worked in Utah, and participated in, directed, controlled, authorized, ratified, cooperated in, or otherwise conspired with the other Defendants to engage in the acts and practices alleged in this Complaint.

15.     At all times relevant to this Complaint, N.A.R., Olson Associates P.C. dba Olson Shaner, and Shaner each had the authority and ability to control the constables' conduct and collection practices but acquiesced, approved, and directed that conduct instead of interfering or stopping those acts and practices.

16.     As referred to in this Complaint, "Defendants" includes each and every Defendant in this case including Olson Associates P.C. dba Olson Shaner, Shaner, N.A.R., Kolkman, Constable Kolkman LLC, and each of the John Doe Defendants.

17.     When this Complaint refers to the "constable Defendants" that specifically includes all of the constables, their companies, and the John Doe Defendants.

18.     At all times material to this Complaint, each of the Defendants regularly collected or attempted to collect, directly or indirectly, consumer debts, including a debt allegedly owed by the Plaintiff. Each Defendant is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6).

19.     None of the Defendants are government employees or agencies.

20.     None of the conduct complained of herein constitutes official duties or duties Utah law authorizes constables to perform.

## FACTUAL ALLEGATIONS

**Alleged Debt**

21.     Sometime prior to November 14, 2022 Plaintiff is alleged to have incurred a debt (alleged debt) with RMAP-Nicholas J. Paulk MD in the amount of $203.26.

22.     After the alleged debt fell past due, RMAP-Nicholas J. Paulk MD assigned it to N.A.R. to collect.

23.     N.A.R. then hired Olson Associates P.C. dba Olson Shaner and its partner Randolph Chip Shaner Jr. (hereafter jointly referred to as Olson Shaner) to collect the alleged debt on its behalf as its agents.

24.     Olson Shaner then commenced a lawsuit on November 14, 2022 against the Plaintiff in Uintah County, Utah on behalf of N.A.R. Inc.[1]

25.     The alleged debt Olsen Shaner was seeking to collect was a personal account originated by RMAP-Nicholas J. Paulk MD for medical services which are personal, family, or household purposes.

---

[1] *N.A.R. Inc., v. Heidi Cordero*, Case No. 229915572

26.     Shortly thereafter, Olson Shaner obtained a judgment in the amount of $786.79.

27.     On May 2, 2023 Olson Shaner requested a Writ of Execution that the Court issued a few days later on May 8, 2023.

28.     The amount due for the alleged debt stated in the Writ of Execution was $919.59.

**Assignment to the Constable Defendants**

29.     Sometime after obtaining the Writ of Execution, Olson Shaner and N.A.R. Inc., hired the constable Defendants as their surrogate debt collectors and provided them with court documentation and instructions about how to proceed to collect the alleged debt from Plaintiff.

30.     Because Olson Shaner engaged the constable Defendants to collect as their surrogates, Olson Shaner and N.A.R. both stopped any of their own efforts to collect the alleged debt.

31.     The constable Defendants then followed Olson Shaner's and N.A.R.'s instructions in collecting and attempting to collect the alleged debt by, among other things, threatening to seize and sell Plaintiff's personal property, negotiating payment arrangements, collecting periodic payments, placing collection calls, mailing collection letters, adding amounts to the debt, and taking other similar actions.

32.     Everything the constables did to collect the debt on behalf of N.A.R. Inc., and Olson Shaner was within the course and scope of the authority N.A.R. and Olson Shaner granted to the constables and for the purpose of collecting money on their behalf.

33.     At all relevant times, N.A.R. and Olson Shaner both knew the constable Defendants were engaging in the acts and practices at issue herein and that such conduct, representations, and threats are prohibited by federal and state law yet they made no effort whatsoever to stop, prevent, or rectify those violations.

34.     At any moment, N.A.R. and Olson Shaner had the power and authority to control the manner in which the constable Defendants pursued payment or to stop the constables from attempting to collect the alleged debt but they instead acquiesced, approved of, and encouraged the constable Defendants' efforts.

**Defendants' July 14, 2023 Collection Letter**

35.     Sometime on or around July 14, 2023, the Kolkman Defendants contacted Plaintiff by mail about paying the alleged debt in accordance with the course and scope of the authority granted to them by Olson Shaner and N.A.R. Inc.

36.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' July 14, 2023 collection letter.

37.     The July 14, 2023 collection letter was styled as a court filing or legal process even though it was not.

38.     The letter the Kolkman Defendants mailed to Plaintiff on July 14, 2023 as collection agents for N.A.R., and Olson Shaner included or referred to a Notice of Sale.

39.     The July 14, 2023 collection letter represented that sale fees may have been added to the alleged debt even though no such fees were ever incurred.

40.     The July 14, 2023 collection letter was the initial collection communication the Defendants had with the Plaintiff but it did not provide notice that it was from a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

41.     None of the Defendants ever sent Plaintiff the notices required by 15 U.S.C. §§ 1692e(11) or 1692g(1).

**Defendants' Notice of Sale**

42.     The Notice of Sale included with the Defendants' July 14, 2023 collection letter stated that the Defendants were holding a sale of Plaintiff's personal property at Plaintiff's home on August 4, 2023 at 11:50.

43.     The Notice of Sale included a solicitation of payment by card, cash, or certified funds and represented that "immediate" contact to make a payment or arrangements was required to cancel the threatened sale.

44.     The representations and implications made in the Notice of Sale were false. No sale was actually scheduled to occur and Plaintiff did not need to contact Defendants to make a payment or arrangements to cancel the nonexistent sale.

45.     None of the Defendants ever properly served legal process on Plaintiff to notify her of a public sale of her property.

46.     Defendants never carried out their threat to seize and sell Plaintiff's property.

47.     Because no sale ever actually occurred, none of the Defendants ever incurred any travel, advertising, service of process, or other similar fees and costs Defendants claimed to have incurred.

48.     Defendants never intended and were not legally capable of carrying out their threat of selling Plaintiff's property on August 4, 2023 as threatened.

49.     Utah law requires Defendants to serve a writ of execution and provided a 14-day time period between the seizure and sale of a debtor's property to allow the debtor to object to the seizure, exercise their exemptions, and enforce their statutory and constitutional protections.

50.    Utah law requires constables serving process outside the county in which they are appointed to contact the sheriff's office or police department of the jurisdiction prior to serving executions or seizing any property.

51.    None of the Defendants were appointed as constables in Uintah County and never contacted or notified the Uintah County sheriff's office or police department of any service of process or the threatened seizure and sale.

52.    Defendants were prohibited by law from seizing or selling any of Plaintiff's property because they were not appointed in Uintah County and never notified the Uintah County sheriff's office or police department of the threatened seizure or sale prior to serving executions or seizing any property.

53.    Upon information and belief, the constable Defendants submitted a Return of Service that falsely stated they personally served Plaintiff with a copy of the Writ of Execution when they did not actually serve her personally.

54.    Upon information and belief, Olson Shaner, on behalf of N.A.R., filed the constable Defendants' false Proof of Service with the state court.

55.    Defendants regularly falsely threaten to hold property seizures and sales like the one made in their Notice of Sale without ever actually serving the writs of execution, notifying local sheriffs or police departments, or carrying out those threats.

56.    Defendants have a policy and practice of falsely threatening to seize and sell debtor's property for the purpose of obtaining payments from those debtors rather than actually holding the threatened sales.

57.    There is nothing in Utah law that authorizes or requires constables to threaten to seize and sell property, negotiate payment arrangements, collect periodic payments, engage in collection telephone calls, mail collection letters,

mail collection letters falsely formatted to look like court pleadings, or otherwise act as a debt collector.

58.    On the contrary, Utah law strictly limits a constable's official duties to; (1) attending justice courts within their appointed city or county; (2) executing, serving, and returning legal process within their appointed city or county; and (3) serving process throughout the state.[2] Constables may also evict tenants and execute writs to seize and dispose of property when properly authorized by a court of law.[3]

**Defendants' July 28, 2023 Collection Letter**

59.    Sometime after July 14, 2023, the Kolkman Defendants, while employed as collectors for Olson Shaner and N.A.R. Inc., contacted Plaintiff by mail with a collection letter dated July 28, 2023 about paying the debt originally owed to RMAP-Nicholas J. Paulk MD.

60.    An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' July 28, 2023 collection letter.

61.    The Defendants' July 28, 2023 collection letter was styled as a court filing or legal process even though it was not.

62.    The July 28, 2023 letter the Kolkman Defendants mailed to Plaintiff as collection agents for N.A.R., and Olson Shaner included or referred to a Writ of Execution provided to the constable Defendants by Olson Shaner to collect the alleged debt.

63.    Defendants threatened to sell Plaintiff's personal property in their July 28, 2023 collection letter.

---

[2] Utah Code Ann. § 17-25-1
[3] Utah Code Ann. §§ 17-25a-3(2), 78B-6-812(1), (3); Utah R. Civ. P. 64(a)(7), (d)

64.     Defendants represented in their July 28, 2023 collection letter that a Notice of Sale was previously mailed to the Plaintiff.

65.     The July 28, 2023 collection letter demanded immediate contact to make payment arrangements in order to cancel the threatened sale.

66.     Defendants' July 28, 2023 collection letter threatened to add additional sale and posting costs if Plaintiff did not make payment arrangements.

67.     The July 28, 2023 collection letter the Defendants sent to Plaintiff did not identify the original creditor or the amount owed and did not include a copy of the judgment against the Plaintiff.

68.     The July 28, 2023 collection letter did not provide notice that it was from a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

**Collection Phone Calls with Defendant's Agent John Doe Defendant ("Nicholas")**

69.     In response to Defendants' threats, on or around August 4, 2023, Plaintiff spoke with John Doe Defendant "Nicholas" by telephone who was employed by N.A.R. to collect the alleged debt.

70.     During the August 4, 2023 phone call, Defendants' agent John Doe Defendant Nicolas attempted to negotiate payment arrangements with the Plaintiff on behalf of, and within the course and scope of his employment with N.A.R.

71.     During the August 4, 2023 phone call, Defendants' agent Nicolas negotiated, solicited, and offered Plaintiff a payment plan.

72.     After the August 4, 2023 collection call, Defendants' agent Nicolas called Plaintiff back and told her that he talked to his superiors and is unable to accept

— 11 —
COMPLAINT

any payments from Plaintiff because the Defendants hired the constable Defendants to collect it.

73.    Nicolas confirmed during the second August 4, 2023 phone call that because N.A.R. and Olson Shaner hired the constable Defendants to collect, Plaintiff was required to negotiate and pay the constables instead of N.A.R. or Olson Shaner.

**Notice of Claim**

74.    Plaintiff filed a Notice of Claim with Salt Lake County on September 6, 2023.

75.    Plaintiff filed another Notice of Claim with Ogden City and Uintah County on October 23, 2023.

76.    In response to the first Notice of Claim, Salt Lake County confirmed that the constables are not employed by the County, affiliated with the County, have never been contracted with the County, and are not agents of the County.

77.    In other cases, Salt Lake and Utah Counties have each confirmed that constables are not government agencies, employees, or agents.

78.    None of the Defendants acts or practices at issue qualify as governmental functions.

79.    Because none of the Defendants are government agencies or employees, and because their conduct does not qualify as governmental functions, Defendants are not entitled to any governmental immunity or any other immunity for the acts and practices at issue in this case.

**Damages**

80.    Plaintiff received and read each of the Defendants' collection letters and personally participated in the collection phone call with John Doe Defendant Nicholas from N.A.R.

81.    Because Plaintiff reasonably believed the Defendants' unintended and unlawful threats and demands, she attempted to make payment arrangements with the Defendants and hired an attorney to defend her from those threats and demands.

82.    The representations, implications, demands, threats, conduct, actions, and omissions made by the constable Defendants all occurred within the course and scope of their employment for N.A.R. and Olson Shaner and with express authority from N.A.R. and Olson Shaner to engage in those acts and practices.

83.    Because these Defendants knowingly and willfully acted in concert with each other, within the course and scope of their employment and authority granted to each other, and for the common purpose of collecting amounts from the Plaintiff, they are jointly and severally liable for the Plaintiff's damages.

84.    As the constable Defendants' principals, N.A.R. and Olson Shaner are jointly and severally responsible for the constables' illegal conduct under a theory of respondeat superior.

85.    N.A.R. and Olson Shaner had the authority and ability to control, direct, and terminate the constable Defendants' efforts in collecting the alleged debt from the Plaintiff and did so by hiring the constable Defendants to collect from Plaintiff.

86.     At all relevant times, N.A.R. and Olson Shaner were aware that the constable Defendants regularly threaten to seize and sell debtors' personal property without intending to carry out those threats.

87.     N.A.R. and Olson Shaner hired the constable Defendants to threaten to seize and sell debtors' personal property even though they did not intend to carry out those threats to subvert the requirements and prohibitions of state and federal law that prevent them from making such threats directly.

88.     N.A.R. and Olson Shaner also engaged the constable Defendants in at least dozens of other cases to perform the same acts and practices at issue here.

89.     As a direct and proximate result of Defendants' acts and practices, Plaintiff incurred attorney's fees and costs and suffered concrete and actual personal injury damages.

90.     Plaintiff suffered from headaches, sleepless nights, anxiety, shortness of breath, confusion, anger, and other similar personal physical injuries as a result of the Defendants' acts and practices at issue.

91.     Plaintiff's damages also include, *inter alia*; deprivations of her Constitutional and civil rights, invasion of privacy, intrusion upon her seclusion, emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, fear, outrage, and other personal injuries and emotional distress.

## COUNT I
## Fair Debt Collection Practices Act
### *15 U.S.C. § 1692 et seq.*

92.     Plaintiff hereby incorporates all other allegations set forth herein.

93.     Each collection letter and telephone call the Defendants had with the Plaintiff is a "communication" as defined in 15 U.S.C. § 1692a(2).

94.    Defendants are all debt collectors as defined by 15 U.S.C. § 1692a(6) because each Defendant regularly collects or attempts to collect debt originally owed or due to others.

95.    Defendants are all debt collectors as defined by 15 U.S.C. § 1692a(6) since their primary purpose is the collection of debt.

96.    N.A.R. Inc., and Olson Shaner hold themselves out publicly as debt collectors engaged in collecting debt for others.

97.    N.A.R. Inc., John Doe Defendant "Nicholas," and the constable Defendants each regularly send collection letters, place collection calls, negotiate payment arrangements with Utah consumers, and enforce consumer agreements.

98.    N.A.R. Inc., and Olson Shaner regularly file lawsuits, obtain judgments, garnish wages, garnish bank accounts, negotiate payments, and take other similar actions to collect debts on behalf of others.

99.    The constable Defendants regularly contract with N.A.R., Olson Shaner, and others to collect or attempt to collect debt from Utah consumers.

100.    The constable Defendants regularly send collection letters, engage in collection calls, and negotiate payment arrangements with Utah consumers.

101.    All of the Defendants regularly accept payments from debtors to collect debts owed to others.

102.    The representations, implications, demands, threats, conduct, actions, and omissions by which the Defendants collected the alleged debt caused Plaintiff damages as described herein and were violations of numerous and multiple provisions of 15 U.S.C. § 1692 *et seq.*

103.    By placing an insignia of a sheriff-style law enforcement badge shaped like a star in their collection letters, the Defendants violated 15 U.S.C. §§ 1692d,

1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(9), 1692e(10), 1692e(13), 1692e(14), and 1692f.

104.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) by representing that Plaintiff owed for amounts, costs, and fees that were not owed, authorized by the judgment, or permitted by law.

105.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, 1692f(1) by threatening to add additional amounts that were not incurred, not permitted by law, and not authorized by the court.

106.    Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), 1692f(6), and 1692g by representing, implying, or threatening to seize and sell Plaintiff's property when such action could not be legally taken and was not intended to be taken.

107.    By representing that a sale was scheduled when it was not scheduled, intended, or legal to carry out, Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), 1692f(6), and 1692g.

108.    Defendants violated 15 U.S.C. § 1692d, 1692d(1),1692e, 1692e(10), and 1692f, among others by filing a false proof of service with the state court and thereby representing to the state court that Plaintiff was served personally when she was not.

109.    By obtaining financial information they could use to collect later when they did not intend to honor the payment arrangements they negotiated, Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692g.

110.     Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose in their initial written communication that they were attempting to collect a debt and that any information obtained will be used for that purpose.

111.     Defendants violated 15 U.S.C. §§ 1692e(11), 1692d, and 1692d(6) by failing to disclose in subsequent communications that the communications were from a debt collector.

112.     Defendants violated 15 U.S.C. § 1692g by failing to provide the required notices, failing to allow Plaintiff 30 days to dispute the alleged debt and request verification, and by engaging in other collection acts and practices that overshadowed and were otherwise inconsistent with Plaintiff's rights to dispute the alleged debt and request verification.

113.     Defendants violated 15 U.S.C. § 1692e(12) by representing or implying that the alleged debt had been turned over to innocent purchasers of value when it was not.

114.     Defendants' collection communications, acts, and practices also violated other provisions of the FDCPA.

115.     As a result of the Defendants' violations of the FDCPA, Plaintiff suffered concrete actual damages as described herein and is entitled to an award against the Defendants jointly and severally for causing those damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

### COUNT II
### Utah Consumer Sales Practices Act
*Utah Code Ann. § 13-11-1 et seq.*

116.     Plaintiff hereby incorporates all other allegations set forth herein.

117.    The Utah Consumer Sales Practices Act was enacted to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and to "recognize and protect suppliers who in good faith comply with the provisions of this act."[4]

118.    Under its plain language the UCSPA "shall be construed liberally" in the consumer's favor to promote those policies.[5]

119.    The UCSPA protects consumers from deceptive acts or practices whether they occur before, during, or after the consumer transaction.[6]

120.    The alleged debt was allegedly incurred for medical services which are personal, family, or household purposes. It is therefore a consumer transaction under Utah Code Ann. § 13-11-3(2).

121.    Each collection letter and telephone call the Defendants had with the Plaintiff is also a "consumer transaction" under Utah law.

122.    Each Defendant is a supplier since they regularly solicit, engage in, and enforce consumer transactions, whether directly or indirectly. They also received the alleged debt through assignment and then sought to enforce it and regularly do the same in other cases.

123.    By engaging in the acts and practices discussed above, Defendants each violated Utah Code Ann. §§ 13-11-4 and 5 which prohibit deceptive and unconscionable collection practices whether they occur before, during, or after the transaction.

124.    Defendants violated the Utah Consumer Sales Practices Act by knowingly and intentionally:

---

[4] Utah Code Ann. § 13-11-2
[5] *Id.*
[6] Utah Code Ann. 13-11-4(1)

124.1.  making false and illegal threats to seize and sell Plaintiff's property;

124.2.  falsely representing or implying their actions were legal and authorized by the law when they were not;

124.3.  adding amounts to the alleged debt Plaintiff did not agree to pay;

124.4.  adding amounts to the alleged debt that were not actually incurred;

124.5.  representing or implying that the constables are government officers, employees, or agencies, when they are not;

124.6.  falsely representing or implying that they and their collection acts and practices are approved, authorized, or otherwise sponsored by the court, county, or other governmental agency;

124.7.  falsely representing that Plaintiff was required to make contact and payment within ten days of the first collection communication when Plaintiff was not so required;

124.8.  falsely indicating or implying that because N.A.R. and Olson Shaner hired the constables to collect as their surrogate debt collectors that Plaintiff is somehow deprived of her legal and constitutional rights and protections;

124.9.  using the office and status of a constable and acting under the color of law to coerce, intimidate, extort, and trick Plaintiff into making payment arrangements she was not otherwise required to make;

124.10.   filing a false proof of service with the state court that represented Plaintiff was served personally with the Writ of Execution when she was not;

124.11.   using the false payment negotiations along with the false threat of a property seizure and sale to obtain financial information from Plaintiff; and

124.12.   holding the constables out as law enforcement officers when they were collecting debts instead of serving legal process or performing any other lawful duties.

125.    Defendants' other knowing and intentional conduct, threats, representations, and other actions discussed herein also constitute violations of the Utah Consumer Sales Practices.

126.    Defendants' conduct described herein was unconscionable as it was willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff.

127.    By engaging in the conduct described herein, the Defendants exercised a gross inequality of bargaining power and deprived Plaintiff of any meaningful choice.

128.    No decent, fair-minded person would view the Defendants' conduct, or the lack of any meaningful choice that conduct created, without being possessed of a profound sense of injustice.

129.    As a result of Defendants' violations of the UCSPA, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Defendants, jointly and severally, for actual and punitive damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to Utah Code Ann. § 13-11-19 and Utah Code Ann. §78B-8-201.

COUNT III
**Fraud**

130.    Plaintiff hereby incorporates all other allegations set forth herein.

131.    The constable Defendants made the fraudulent representations, implications, threats, and omissions discussed herein on behalf of Olson Shaner and N.A.R. Those representations are attributable to all of the Defendants as they were made by the constable Defendants with the express and implied authority granted to the constable Defendants by N.A.R. and Olson Shaner.

132.    In the alternative, the constable Defendants committed fraud by holding themselves out to the Plaintiff and others as agents with express and implied authority from N.A.R. and Olson Shaner to collect the debt, negotiate payment plans, accept payments, calculate amounts due, and take other actions on behalf of N.A.R. and Olson Shaner to collect the debt that they did not have.

133.    The fraudulent representations, implications, omissions, and threats the constable Defendants made with the authority, knowledge, and approval of N.A.R. and Olson Shaner included:

    133.1.  fraudulent representations, implications, and threats about seizing and selling Plaintiff's property, soliciting and receiving payment for the alleged debt, soliciting and enforcing payment agreements without due process of law, and other similar false representations;

    133.2.  the amount of the alleged debt, service of process, due process of law, the amounts they could charge to collect the alleged debt, the amounts they could legally add to the alleged debt, the assignment of the alleged debt, and the legal process available to seize and sell Plaintiff's property;

    133.3.  the legal authority they are authorized to exercise; and

133.4.  the enforceability of the Writ of Execution.

134.    With the authority, knowledge, and approval of N.A.R. and Olson Shaner, the constable Defendants fraudulently held themselves out as law enforcement officers acting under color of law when they were not performing any official duties in collecting the debt from the Plaintiff.

135.    With the authority, knowledge, and approval of N.A.R. and Olson Shaner, the constable Defendants made fraudulent representations, implications, threats, and omissions about scheduling, advertising, and postponing a sale that was never actually intended, scheduled, or legal to conduct.

136.    With the authority, knowledge, and approval of N.A.R. and Olson Shaner, the constable Defendants made fraudulent representations, implications, threats, and omissions about allowing the general public into Plaintiff's private property and residence.

137.    With the authority, knowledge, and approval of N.A.R. and Olson Shaner, the constable Defendants made fraudulent representations, implications, threats, and omissions about whether or not the property they were threatening to seize and sell was exempt.

138.    The constable Defendants knowingly and intentionally made other fraudulent representations, implications, demands, threats, actions, omissions, and communications with the authority, knowledge, and approval of N.A.R. and Olson Shaner.

139.    Each of the Defendants committed fraud by filing a false proof of service with the state court that represented Plaintiff was served personally with the Writ of Execution when she was not.

140.    Because Plaintiff relied on and believed Defendants' fraudulent representations, implications, and threats, she hired an attorney and incurred attorney's fees and legal costs to oppose Defendant's collection efforts.

141.    Plaintiff also contacted Defendants and attempted to make payment arrangements she was not required to make as a result of the Defendants' fraud.

142.    Plaintiff was ignorant to the falsity of Defendants' fraudulent representations when she acted upon them.

143.    Defendants never corrected or retracted their fraudulent conduct.

144.    In all respects, Defendants each participated, allowed, concealed, ratified, acquiesced to, and benefitted from the fraud at issue.

145.    Each of Defendants' fraudulent implications, representations, and omissions was made by Defendants to induce Plaintiff or others into acting on their behalf.

146.    Each of Defendants' fraudulent implications, representations, and omissions were material as they formed the basis for all of the additional collection acts and practices Defendants employed to collect the alleged debt.

147.    As co-conspirators with the authority to control, and knowledge of, each other's conduct and representations, Defendants are jointly and severally responsible for the harm their fraudulent representations and conduct caused to the Plaintiff.

148.    Plaintiff's injuries discussed above resulted from the Defendants' fraud and arrangements with each other to commit that fraud.

149.    Defendants' fraudulent communications were all made or omitted intentionally, knowingly, or with a reckless disregard for the truth.

150.    Because of Defendants' fraud, Plaintiff was harmed as discussed above and is entitled to an award of her actual damages, punitive damages, and court costs against all the Defendants jointly and severally.

COUNT IV
**Civil Rights Act**
*42 U.S.C. § 1983*

151.    Plaintiff hereby incorporates all other allegations set forth herein.

152.    42 U.S.C. § 1983 provides a federal cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."[7]

153.    At all times relevant to this case the Defendants were acting in concert with each other under color of law in attempting to collect the alleged debt.

154.    At all times relevant to this case the constable Defendants held themselves out as government officials exercising governmental authority in collecting the alleged debt and did so with the knowledge, approval, and under the supervision of Olson Shaner and N.A.R.

155.    Through their collection acts and practices described above, the Defendants subverted the prohibitions and requirements of state and federal laws pertaining to debt collection and consumer sales practices.

156.    By employing the collection acts and practices at issue while acting under the color of law, the Defendants unlawfully deprived Plaintiff of property without due process of law and her rights to equal protection under the law in violation of the Fourteenth Amendment to the Constitution of the United States.

---

[7]  42 U.S.C. § 1983

157.    The Defendants also unlawfully deprived Plaintiff of her rights, privileges, and immunities guaranteed by the Fourth Amendment to the Constitution of the United States.

158.    The Defendants also unlawfully deprived Plaintiff of her property and her rights, privileges, and immunities guaranteed by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.

159.    At all times relevant hereto, the Defendants acted pursuant to a policy or custom of depriving debtors of personal property without due process of law, denying debtors of their right to equal protection of the law, and in depriving Plaintiff and others of their property and their rights, privileges, and immunities guaranteed by the Constitution of the United States and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.

160.    The Defendants failed to adopt clear policies and failed to properly train their constables, agents, and employees about their proper role in private debt collection disputes.

161.    The Defendants' policies or customs, their failure to adopt clear policies, and failure to properly train and supervise their constables, agents, and employees were direct and proximate causes of the constitutional and legal deprivations suffered by Plaintiff.

162.    At all relevant times, N.A.R., and Olson Shaner knew about and acquiesced in the civil rights violations and fraud at issue as part of a common plan with each other and the constable Defendants.

163.    N.A.R., and Olson Shaner set about the series of acts by the constable Defendants when they reasonably knew or should have known doing so would

cause the constable Defendants to inflict the civil rights violations and fraud at issue.

164.    N.A.R., and Olson Shaner are integral participants in the civil rights violations and fraud at issue as it was their conduct, instructions, and acquiescence to the plan that set into motion the civil rights violations and fraud that occurred.

165.    As a result of the constitutional and legal deprivations the Defendants caused, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against the Defendants, jointly and severally, for damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to 42 U.S.C. § 1983.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendants jointly and severally as follows:

166.    For an award of actual and statutory damages;

167.    For an award of punitive damages;

168.    For reimbursement of the amounts that unjustly enriched the Defendants;

169.    For an award of Plaintiff's attorney's fees and costs;

170.    For pre-judgment and post judgment interest at the legal rates;

171.    For appropriate injunctive relief;

172.    For declaration that the constable Defendants' acts, taken in their individual and official capacities, violate the Fourth and Fourteenth Amendments to the United States Constitution.

173.    For leave to amend this Complaint as interests of justice may allow; and

174.    For such other and further additional relief as may be determined to be appropriate and as the Court may find just, equitable, and proper.

JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED 10/23/2023                    Eric Stephenson
                                   *Attorney for the Plaintiff*