IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **HEIDI CORDERO**, <br><br> Plaintiff, <br><br> v. <br><br> **OLSON ASSOCIATES P.C. dba OLSON SHANER**, **RANDOLPH CHIP SHANER JR.**, **ROB KOLKMAN, CONSTABLE KOLKMAN LLC**, **N.A.R., INC.**, and **JOHN DOES 1-5**, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' ALTERNATIVE MOTION TO CERTIFY ISSUE OF STATE LAW TO THE UTAH SUPREME COURT AND DEFENDANTS' MOTION TO STAY** <br><br> Case No. 2:23-CV-00756-JNP <br><br> District Judge Jill N. Parrish |

The Plaintiff, Heidi Cordero ("Ms. Cordero"), filed a complaint against Defendants N.A.R., Inc. ("N.A.R."), Olson Associates P.C. dba Olson Shaner, and Randolph Chip Shaner Jr. ("Mr. Shaner") (collectively, the "NAR Defendants") and Rob Kolkman, Constable Kolk, LLC, and John Does 1 through 5 (collectively, the "Constable Defendants"), alleging that the Defendants collectively engaged in debt collection practices that violated Ms. Cordero's rights under state and federal law. Before the court are motions filed by the NAR Defendants, who seek the dismissal of Ms. Cordero's complaint, or in the alternative, the certification of an issue of state law to the Utah Supreme Court and the entry of a stay in this matter. *See* ECF Nos. 13–15. The NAR Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART and the NAR Defendants' alternative motions to certify a question of law to the Utah Supreme Court and stay this case are DENIED.

## BACKGROUND[1]

On or before November 14, 2022, Ms. Cordero allegedly incurred $203.26 in medical debt with RMAP-Nicholas J. Paulk, M.D. ECF No. 2 ("Compl."), ¶ 21. The lender assigned the debt to N.A.R. to collect, and N.A.R. in turn hired Olson Shaner (along with its partner Mr. Shaner) to collect the debt. *Id.*, ¶¶ 22–23. Olson Shaner sued Ms. Cordero in Utah state court and obtained a judgment against her in the amount of $786.79. *Id.*, ¶¶ 24–26. Olson Shaner requested a Writ of Execution, which the state court issued on May 8, 2023, stating that the amount due was now $919.59. *Id.*, ¶ 27.

After obtaining the Writ of Execution, the NAR Defendants hired the Constable Defendants to be their surrogate debt collectors, providing the Constable Defendants with the writ and instructions regarding how to collect the debt. Compl., ¶ 29. Thereafter, the NAR Defendants ceased any independent debt collection efforts. *Id.*, ¶ 30. The Constable Defendants acted in excess of their authority under state law, following the NAR Defendants' instructions in attempting to collect the debt, including by engaging in debt collection acts and practices that are prohibited by federal and state law. *Id.*, ¶¶ 31–33. The NAR Defendants, however, did not make any effort to prevent such debt collection practices even though they possessed power and authority to control the manner in which the Constable Defendants collected the debt or to stop the Constable Defendants from continuing in their efforts to collect the debt. *Id.*, ¶¶ 33–34.

The Constable Defendants' collection efforts included several forms of allegedly proscribed debt collection practices. The Constable Defendants issued collection letters to Ms.

---

[1] The court recites the facts according to the well-pled allegations in Ms. Cordero's complaint, viewed in the light most favorable to her. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). Disputed facts—such as whether the NAR Defendants "hired" the Constable Defendants or controlled the Constable Defendants' conduct—are properly addressed on a motion for summary judgment. The parties' dispute over what was said in a phone call between Ms. Cordero and one of N.A.R.'s employees falls within this group of disputed facts that the court does not address in this order.

Cordero that were emblazoned with a sheriff-style law enforcement badge. Compl., ¶¶ 35–36. The Constable Defendants sent a collection letter styled as a court filing or legal process even though the letter was neither of those documents. *Id.*, ¶ 37. The Constable Defendants' initial collection letter also failed to indicate that it was a debt collector's attempt to collect a debt. *Id.*, ¶ 40. Finally, the Constable Defendants never sent notices to Ms. Cordero as required by United States Code §§ 1692e(11) or 1692g(1).

The Constable Defendants' initial collection letter also served as a notice regarding the sale of Ms. Cordero's personal property. Before the Constable Defendants had engaged in prerequisite conduct to be permitted to lawfully seize or sell Ms. Cordero's personal property under Utah law, the Constable Defendants' letter falsely represented that a sale had been scheduled and that sale fees would be added to the alleged debt even though no such fees had been incurred. Compl., ¶¶ 38–39, 43–52. After sending a collection letter to Ms. Cordero, the Constable Defendants submitted a falsified return of service stating that they had personally served Ms. Cordero with a copy of the Writ of Execution when no such service had occurred. *Id.*, ¶ 53. The NAR Defendants filed the Constable Defendants' falsified return of service with the state court. *Id.*, ¶ 54.

Following the Constable Defendants' attempts to collect on the debt through collection letters, John Doe Defendant "Nicholas" spoke with Ms. Cordero by telephone on August 4, 2023. Compl., ¶ 69. During that phone call, Nicholas attempted to negotiate a payment arrangement with Ms. Cordero, offering her a payment plan to resolve her debt obligation with N.A.R. *Id.*, ¶¶ 70–71. Nicholas later called Ms. Cordero to rescind the offer, informing her that his supervisors at N.A.R. were unable to accept debt payments from Ms. Cordero because the NAR Defendants had hired the Constable Defendants to collect the debt. *Id.*, ¶¶ 72–73.

On October 23, 2023, Ms. Cordero sued the NAR Defendants and the Constable

Defendants in this court, alleging violations of state and federal laws related to debt collection. ECF No. 2. Now, the NAR Defendants move to dismiss Ms. Cordero's complaint, contending that her pleading failed to state a claim upon which relief may be granted. ECF No. 13. In the alternative, the NAR Defendants request the certification of a question of law to the Utah Supreme Court and the simultaneous stay of this action. ECF Nos. 14, 15.

**LEGAL STANDARD**

A Rule 12(b)(6) motion drives the court to "look for plausibility in th[e] complaint." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations and internal quotation marks omitted) (alteration in original). The court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (alteration in original) (internal citation omitted); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) ("Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient.") (citation omitted).

Facts alleged "upon information and belief" may meet Rule 12(b)(6)'s plausibility standard so long as they are not merely conclusory and are "peculiarly within the possession and control of the defendant" or "based on factual information that makes [an] inference of culpability plausible." *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012); *Dorf v. City of Evansville*, No. 11-CV-351-S, 2012 U.S. Dist. LEXIS 57416, at *17 (D. Wyo. Apr. 22, 2012) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (discussing "information

and belief" pleading after *Iqbal* and *Twombly*)).[2]

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted" when "accept[ing] as true all well-pleaded factual allegations in the complaint and view[ing] them in the light most favorable to the plaintiff." *Burnett*, 706 F.3d at 1235 (citing Fed. R. Civ. P. 12(b)(6)). Unlike a Rule 12(b)(1) motion, which may address the factual existence of subject-matter jurisdiction based on pleadings and evidence, a Rule 12(b)(6) motion is limited to the sufficiency of the allegations "within the four corners of the complaint"—additional allegations made in a response brief or attached exhibits cannot be considered. *Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)); *see also Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

## ANALYSIS

The NAR Defendants move to dismiss Ms. Cordero's entire complaint with prejudice. ECF No. 13. The court must therefore consider (I) Ms. Cordero's claims against the Constable Defendants; (II) whether Ms. Cordero adequately alleged an agency relationship among the Defendants; (III) whether Ms. Cordero's complaint is an impermissible shotgun pleading; and the NAR Defendants' arguments for the dismissal of (IV) Ms. Cordero's Section 1983 claim; (V) her Utah Consumer Sales Practices Act ("UCSPA") claim; and (VI) her fraud claim. In the event that the court denies the NAR Defendants' motion to dismiss in whole or in part, the court will also consider (VII) the NAR Defendants' alternative motion to certify a question of law to the Utah

---

[2] The Tenth Circuit Court of Appeals has applied this pleading standard in cases involving Rule 9's heightened pleading standard for allegations of fraud. *See, e.g. Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000) (citing *Scheidt v. Klein*, 956 F.2d 963 (10th Cir. 1992)). Other courts within the Tenth Circuit, however, have found occasion to more broadly apply this standard under Rule 12(b)(6). *See, e.g., Lee v. U.S. Bank N.A. (In re Lee)*, 2019 Bankr. LEXIS 3472, at *3 (Kans. Bankr. Nov. 7, 2019) (collecting cases); *Dorf*, 2012 U.S. Dist. LEXIS 57416 (citing *Arista Records, LLC*, 604 F.3d at 120).

Supreme Court and (VIII) their alternative motion to stay this action.

## I.   MS. CORDERO'S CLAIMS AGAINST THE CONSTABLE DEFENDANTS

The NAR Defendants request dismissal of Ms. Cordero's entire complaint with prejudice. The NAR Defendants' motion thus requests dismissal of Ms. Cordero's claims against the Constable Defendants, who are represented by separate counsel and have neither joined the NAR Defendants' motion nor filed a separate motion to dismiss.[3] The court thus presumes that the Constable Defendants will assert their own rights, as they are required to do, rather than relying upon another party's motion. At this stage, the court therefore finds it premature to consider arguments in favor of the dismissal of claims against the Constable Defendants. The NAR Defendants' motion to dismiss is denied to the extent that it requests the dismissal of Ms. Cordero's claims against the Constable Defendants.

Having addressed the propriety of permitting the NAR Defendants to seek the dismissal of Ms. Cordero's complaint in its entirety, the court turns to the NAR Defendants' various arguments for the dismissal of Ms. Cordero's claims against them. The NAR Defendants first raise arguments that purport to each provide a sufficient basis to dismiss all of Ms. Cordero's claims. The NAR Defendants then raise arguments specific to Ms. Cordero's individual claims.

## II.   ALLEGATIONS OF AN AGENCY RELATIONSHIP BETWEEN THE CONSTABLE DEFENDANTS AND THE NAR DEFENDANTS

The NAR Defendants' first argument for the dismissal of all of Ms. Cordero's claims is that Ms. Cordero failed to adequately allege an agency relationship between the NAR Defendants

---

[3] At oral argument, the Constable Defendants' counsel confirmed that they were not joining the NAR Defendants' motion.

and the Constable Defendants. Ms. Cordero's claims against the NAR Defendants rely upon the existence of such a relationship. But the court finds that Ms. Cordero may state a claim against the NAR Defendants under a theory of *respondeat superior* and therefore denies the NAR Defendants' motion to dismiss Ms. Cordero's claims on this basis.[4]

*Respondeat superior* liability permits "employers [to be] held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment." *Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶ 56, 496 P.3d 201 (quoting *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991)); *see also Phillips v. JCM Dev. Corp.*, 666 P.2d 876, 881 (Utah 1983). In order to establish *respondeat superior* liability, the plaintiff must allege facts sufficient to demonstrate that the agent was a servant- or employee-style agent because "Utah law does not recognize *respondeat superior* liability for the torts of independent contactors[.]" *See Peretto v. Erickson*, No. 1:23-CV-00025-DBB-DBP, 2024 U.S. Dist. LEXIS 24611, *18 n.87 (D. Utah Feb. 12, 2024) (citing *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 22, 215 P.3d 143). To determine whether Ms. Cordero adequately alleged that the NAR Defendants are vicariously liable for the Constable Defendants' conduct under this theory, the court must consider two questions: 1) whether the Constable Defendants are alleged to be "employees" of the NAR Defendants and 2) whether the Constable Defendants' alleged misconduct occurred "within the scope of their employment."

Ms. Cordero adequately alleged that the Constable Defendants were the NAR Defendants' "employees." Under Utah law, the primary factor used to identify an employee-style agency relationship is whether "the [principal] controls, or has the right [to] control, the manner in which

---

[4] Because Ms. Cordero's allegations of *respondeat superior* liability provide a sufficient basis to deny the NAR Defendants' motion to dismiss, the court does not address Ms. Cordero's other allegations relevant to vicarious liability, which assert that the NAR Defendants are liable for the Constable Defendants' conduct under a joint venture theory of liability or because the Constable Defendants acted with actual or apparent authority.

the operations are to be carried out." *Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 21, 332 P.3d

922 (quoting *Foster v. Steed*, 19 Utah 2d 435, 432 P.2d 60, 62 (1967)) (alteration in original).

Because an employee-style agency relationship "cannot 'be defined in general terms with

substantial accuracy,'" however, courts "commonly look to several factors in determining whether

such relationship exists." *Id.* (quoting Restatement (Second) of Agency ¶ 220 cmt. c (1958)). Those

factors include "the 'right to discharge'" the employee as well as "the 'nature of [the] work'

performed[] and whether the relationship is 'for a definite piece of work.'" *Id.* (quoting

*Intermountain Speedways, Inc. v. Indus. Comm'n*, 101 Utah 573, 126 P.2d 22, 24 (Utah 1942)).

In *Peretto*, another judge on this court recently concluded that debt collectors were not

plausibly alleged to have controlled constables' conduct. *Peretto*, 2024 U.S. Dist. LEXIS 24611,

at *18–19. There, the court concluded that a plaintiff's complaint alleged an agency relationship

between a law firm and constables, but that the complaint "d[id] not allege facts to suggest that

Cherrington had the right to control the manner in which Constable Defendants sought to collect

the debt." *Id.* Ms. Cordero's complaint, on the other hand, contains several related allegations that

the Constable Defendants acted subject to the NAR Defendants' control.[5] In *Young*, the court

---

[5] *See, e.g.,* Compl., ¶¶ 15 ("N.A.R., Olson Associates P.C. dba Olson Shaner, and Shaner each had the authority and
ability to control the constables' conduct and collection practices but acquiesced, approved, and directed that
conduct instead of interfering or stopping those acts and practices."); 31 ("The constable Defendants then followed
Olson Shaner's and N.A.R.'s instructions in collecting and attempting to collect the alleged debt . . . ."); 32
("Everything the constables did to collect the debt on behalf of N.A.R. Inc., and Olson Shaner was within the course
and scope of the authority N.A.R. and Olson Shaner granted to the constables and for the purpose of collecting
money on their behalf."); 33 ("N.A.R. and Olson Shaner both knew the constable Defendants were engaging in the
acts and practices at issue herein and that such conduct, representations, and threats are prohibited by federal and
state law yet they made no effort whatsoever to stop, prevent, or rectify those violations."); 34 ("At any moment,
N.A.R. and Olson Shaner had the power and authority to control the manner in which the constable Defendants
pursued payment or to stop the constables from attempting to collect the alleged debt but they instead acquiesced,
approved of, and encouraged the constable Defendants' efforts."); 82 ("The representations, implications, demands,
threats, conduct, actions, and omissions made by the constable Defendants all occurred within the course and scope
of their employment for N.A.R. and Olson Shaner and with express authority from N.A.R. and Olson Shaner to
engage in those acts and practices."); 85 ("N.A.R. and Olson Shaner had the authority and ability to control, direct,
and terminate the constable Defendants' efforts in collecting the alleged debt from the Plaintiff and did so by hiring
the constable Defendants to collect from Plaintiff."); 87 ("N.A.R. and Olson Shaner hired the constable Defendants
to threaten to seize and sell debtors' personal property even though they did not intend to carry out those threats to

considered a plaintiff's similar allegations, but found them to be conclusory. *See Young v. Erickson*, No. 2:23-CV-420-TS, 2024 U.S. Dist. LEXIS 4119, at *6, 12 (D. Utah Jan. 8, 2024) (noting that the plaintiff's complaint contained only "vague allegations" regarding agency and that the "allegations of an agency relationship between the constables and MLC are conclusory"). But the court does not find Ms. Cordero's allegations related to the Defendants' agency relationship to be conclusory.

"An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Frey v. Town of Jackson*, 41 F.4th 1223, 1233 (10th Cir. 2022) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The court's role is therefore to disregard conclusory allegations and determine whether the plaintiff stated a plausible claim based on the remaining factual allegations. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). Ms. Cordero does not merely assert the conclusion that the NAR Defendants controlled the Constable Defendants' conduct. Instead, she supports that allegation with additional factual allegations: that the NAR Defendants selected and hired the Constable Defendants, provided the Constable Defendants with specific instructions regarding how to collect the judgment, oversaw the Constable Defendants' collection efforts, and failed to stop the Constable Defendants from violating state and federal law despite possessing authority to do so.[6] Ms. Cordero's complaint further alleges that the NAR Defendants possessed authority to stop the Constable Defendants' conduct at any time and that the

---

subvert the requirements and prohibitions of state and federal law that prevent them from making such threats directly.").

[6] *See* n.5, *supra*.

NAR Defendants "also engaged the constable Defendants in at least dozens of other cases to perform the same acts and practices at issue here." Compl., ¶¶ 34, 88. The court finds such allegations sufficient to support the allegation that the Constable Defendants were not merely the NAR Defendants' independent contractors, but instead were "employees."

The court also concludes that Ms. Cordero has alleged that the Constable Defendants were acting within the scope of their employment when they allegedly wronged Ms. Cordero. *See* Compl., ¶¶ 31 ("The constable Defendants then followed Olson Shaner's and N.A.R.'s instructions in collecting and attempting to collect the alleged debt . . . ."); 32 ("Everything the constables did to collect the debt on behalf of N.A.R. Inc., and Olson Shaner was within the course and scope of the authority N.A.R. and Olson Shaner granted to the constables and for the purpose of collecting money on their behalf."). The NAR Defendants do not meaningfully dispute this conclusion apart from their objections to the existence of an agency relationship among the Defendants.

Having found that the Constable Defendants' actions giving rise to Ms. Cordero's complaint are alleged to have occurred while the Constable Defendants were subject to the NAR Defendants' control and within the scope of the Defendants' agency relationship, the court concludes that Ms. Cordero adequately alleged that the Constable Defendants were the NAR Defendants' employee- or servant-style agents. As a result, Ms. Cordero may state a claim against the NAR Defendants under a theory of *respondeat superior*. The NAR Defendants, however, raise three additional arguments against the foregoing conclusion.

First, the NAR Defendants point to the Utah statutes that empower constables, contending that those provisions establish that the Constable Defendants are agents of the state of Utah and consequently cannot be the NAR Defendants' agents. *See* ECF No. 13, at 13–16 (citing Utah Code Ann. §§ 17-25-1, 17-25a-4(1), 17-22-2.5(2)(d), (k), and (m); Utah R. Civ. P. 64(a)(7), 69A, and

69B). These provisions establish the duties, role, and powers of Utah constables, who are authorized by statute to serve process throughout the state and seize and sell property as directed by a writ of execution. *Id.*; *see also Rich v. Industrial Comm'n*, 80 Utah 511, 15 P.2d 641 (1932) (describing the history and origin of office of constable under Utah law). But nothing in the Utah statutes that define constables' duties and authority forecloses Ms. Cordero's allegation as a matter of law—she alleges that the Constable Defendants *exceeded* the scope of their statutory duties by acting in concert with the NAR Defendants to collect the debt in manners violative of state and federal law. The court thus does not find that the statutes empowering constables under Utah law necessitate the dismissal of Ms. Cordero's claims.

Second, the NAR Defendants cite two recent decisions from judges on this court, which they insist establish that the Constable Defendants are officers of the state, such that their conduct cannot give rise to a claim against the NAR Defendants. *See Sexton v. Poulson & Skousen P.C.*, 372 F.Supp.3d 1307, 1316 (D. Utah 2019); *Ruesch v. Purple Shovel, LLC*, No. 4:18-cv-00028-DN, 2021 WL 1200368, *5 (D. Utah March 30, 2021). In *Sexton*, this court concluded that constables are "officers of the state" because "Utah endows constables with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform." *Sexton*, 372 F. Supp. 3d at 1316. But the court did not address the question of whether that conclusion would prevent constables from misusing their authority to act as employee- or servant-style agents of debt collectors. Instead, the remainder of the court's order denied the constables' motion for summary judgment, concluding that constables' status as officers of the state "does not automatically shield the constable defendants from liability" under the FDCPA. *Id.* The district court's decision in *Ruesch* is no more helpful to the NAR Defendants. In that case, the judge wrote that constables are agents of the state of Utah because state law authorizes their actions. *Ruesch*,

2021 U.S. Dist. LEXIS 62394, at *11. The court then concluded that a constable was entitled to governmental immunity when exercising the powers of his or her office to execute a writ under the court's instructions. *Id.* at *12. This decision regarding a constable's immunity from suit says little about whether a debt collector may be held vicariously liable for a constable's actions when that constable is alleged to have acted *beyond* the scope of his or her authority under state law. The court thus finds that the reasoning articulated in *Sexton* and *Ruesch* does not require the dismissal of Ms. Cordero's claims against the NAR Defendants.

Finally, the NAR Defendants point to a recently adopted bill, which they argue establishes that the NAR Defendants cannot be held liable for the Constable Defendants' conduct as a matter of law. When this lawsuit was filed, Section 17-25-1 of the Utah Code read as follows:

> (1) Every constable shall:
>     (a) attend the justice courts within his city or county when required by contract or court order; and
>     (b) execute, serve, and return all process directed or delivered to him by a judge of the justice court serving the city or county, or by any competent authority within the limits of this section.
> (2) Any constable may serve any process throughout the state.

Utah Code Ann. § 17-25-1 (*Effective until 7/1/2024*). On March 13, 2024, however, the Governor signed H.B. 300, *Court Amendments* into law. The bill, which took effect on July 1, 2024, amends Section 17-25-1 and adds language regarding constables' agency relationship with the state:

> (1) A constable shall:
>     (a) attend the justice courts within the constable's city or county when required by contract or court order; and
>     (b) execute, serve, and return all process directed or delivered to the constable by a judge of the justice court serving the city or county, or by any competent authority within the limits of this section.
> (2) A constable may:
>     (a) serve any process throughout the state; and
>     (b) carry out all other functions associated with a constable.
> (3) A constable shall serve exclusively as an agent for:
>     (a) the state, city, or county that has a contract with the constable; or
>     (b) the court authorizing or directing the constable.

(4) Except as otherwise provided in this part, a constable may not serve as an agent, or be deemed to be serving as an agent, for a person that is not described in Subsection (3).

Utah Code Ann. § 17-25-1 (*Effective 7/1/2024*). The NAR Defendants argue that H.B. 300 is merely a clarifying amendment, such that the court should retroactively apply the new statute, which took effect after the filing of this lawsuit and the parties' briefing of the present motion, to foreclose any argument that the NAR Defendants could be held liable for the Constable Defendants' alleged misconduct. The court declines to do so.

The Tenth Circuit has recognized that some bills are merely clarifying amendments, serving to establish in clear terms what a statute was originally intended to mean. "It is hazardous, however, to assume from the enactment of a 'clarifying' amendment that [the Legislature] necessarily was merely restating the intent" of the statute. *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1436 (10th Cir. 1997) (quoting *O'Gilvie v. United States*, 519 U.S. 79 (1996)). Such an assumption is particularly hazardous when considered in the context of an amendment to a statute that was adopted two decades ago. *Id.* at 1436.

The court hesitates to apply H.B. 300's language because it is not safe to assume that the Utah Legislature's recent passage of the bill was merely intended to clarify the language of a statute that was originally adopted by a different composition of that legislative body in 2003. *See Fowler*, 128 F.3d at 1436 (citing *O'Gilvie v. United States*, 66 F.3d 1550, 1559 (10th Cir. 1996)). The same principle counsels against applying H.B. 300 in the instant case. *Fowler*, 128 F.3d at 1436 ("[A]bsent a clear indication that Congress intended the Amendments merely to clarify the proper interpretation of its prior Act, we consider the Amendments to implement a change in the Act, and we apply them only to events occurring after the Act's effective date."). The NAR Defendants assert that the Utah Legislature "expressly stated" that H.B. 300 was only intended to be a

clarifying amendment. ECF No. 33, at 2. But the court finds no support for that claim in the text of the bill.[7] Moreover, even if the court somehow found H.B. 300 applicable, the court would still question whether the bill's plain language would significantly support the NAR Defendants' motion.[8] Further, the court anticipates other issues arising if H.B. 300 were raised as a defense later in this lawsuit.[9]

For the reasons stated, the court concludes that Ms. Cordero has adequately alleged that the Constable Defendants were acting as the NAR Defendants' employee- or servant-style agents when attempting to collect the debt. The NAR Defendants' motion to dismiss Ms. Cordero's claims is therefore denied to the extent that it argues that Ms. Cordero failed to allege an agency relationship sufficient to state a claim against the NAR Defendants because Ms. Cordero may allege that the NAR Defendants are liable under a theory of *respondeat superior*.

---

[7] The only support for this proposition appears to be found in the bill's summary, written by the drafting attorney separate and apart from the actual text of the bill that amends Section 17-25-1. *See* H.B. 300, Court Amendments, available at https://le.utah.gov/~2024/bills/static/HB0300.html ("This Bill: . . . *clarifies the role and duties of a constable*[.]") (emphasis added).

[8] The NAR Defendants argue that H.B. 300 means that an individual who holds the office of constable lacks capacity to enter an agency relationship with any person or entity besides the state. Under this interpretation, the bill arguably supports the NAR Defendants' argument that the Constable Defendants could not be their agents as a matter of law. But H.B. 300 is also open to the contrary interpretation that a constable is prohibited from using his or her office to act as an agent for a third party. This reading appears consistent with subsection 17-25-1(3)'s plain language, which prescribes rules for whom a constable may serve as an agent. Under this alternative interpretation, H.B. 300 would have no effect on the Constable Defendants' capacity to act beyond the scope of their authority as the NAR Defendants' agents; instead, the Constable Defendants would simply be violating the new law in addition to those laws that Ms. Cordero has already alleged the Constable Defendants to have violated.

Because H.B. 300 lacks a clear indication that it was intended to merely clarify § 17-25-1's original meaning, the court declines to apply H.B. 300 retroactively and prior to its effective date. As a result, the court does not reach the question of the bill's proper interpretation. *Fowler*, 128 F.3d at 1436.

[9] At oral argument, the NAR Defendants' counsel suggested that after H.B. 300's effective date, a complaint like Ms. Cordero's would be entirely subject to dismissal. A debt collector *could* hire a constable and direct the constable to violate state and federal law, he argued, and H.B. 300 would prevent the debt collector from being sued for the constable's misconduct under any theory of agency. If that were true, debt collectors could easily evade the FDCPA's provisions, essentially nullifying a federal remedial statute intended to protect consumers from "abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Even if the state intended to do so by adopting H.B. 300, this court questions whether a state could shield its debt collectors from FDCPA liability in such a manner. But the court need not resolve this question at this point in the litigation.

III.     **SHOTGUN PLEADING**

The NAR Defendants next seek dismissal of Ms. Cordero's entire complaint on the basis that it is an impermissible "shotgun pleading." ECF No. 13, at 4–7. The court does not find either of the NAR Defendants' arguments on this issue to be persuasive.

First, the NAR Defendants argue that Ms. Cordero's complaint is insufficiently plead as a matter of law because "the first paragraph of each cause of action states that 'Plaintiff hereby incorporates all other allegations set forth herein'" notwithstanding conflicting factual arguments made throughout the complaint. *Id.* at 6. For example, the NAR Defendants argue that Ms. Cordero's pleading creates a conflict between allegations in other portions of her complaint that the Constable Defendants are not agents of any governmental entity and her representation in support of her § 1983 claim that all Defendants "act[ed] in concert with each other under color of law . . . ." Relatedly, the NAR Defendants note that the complaint alleges one of N.A.R., Inc.'s employee's is an agent of all Defendants, which "makes no sense in light of Plaintiff's theory that the Constable Defendants are agents of [the NAR Defendants], not the other way around." ECF No. 13, at 7. Similarly, the complaint alleges that all Defendants "hired the [C]onstable Defendants[,]" which likewise seems contradictory given that "Defendants" is defined in the complaint to include the Constable Defendants. *Id.*

The NAR Defendants' motion does not point to any binding authority holding that incorporating prior factual allegations by reference into each claim establishes sufficient grounds for dismissing a plaintiff's entire complaint. Even the district court cases that the NAR Defendants cite appear to bely that notion. *See, e.g., Swenson v. Storage, LLC*, No. 21-CV-01968-CMA-STV, 2022 U.S. Dist. LEXIS 86466, at *14–15 (D. Colo. Apr. 26, 2022) ("Although this Court agrees that, technically, it is inappropriate for a plaintiff to incorporate by reference all prior allegations

into each of their claims, in this Court's experience, it is a practice that is almost universally employed by the attorneys who practice before this Court. *This Court does not find such a technical violation to warrant dismissing a complaint where, despite the overbroad incorporation of preceding allegations, the defendant is provided fair notice of the factual and legal basis for each claim*.") (emphasis added).

Despite the complaint's contradictory allegations, the court finds the complaint adequately provided the NAR Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). The court is particularly confident in this conclusion because the NAR Defendants briefed a thorough motion to dismiss contesting the particular facts and grounds upon which each of Ms. Cordero's claims rest.[10] The court therefore denies the NAR Defendants' motion to the extent that it requests the outright dismissal of Ms. Cordero's complaint—with prejudice—on account of the assertion that it is insufficient to provide the NAR Defendants with adequate notice of the factual basis of her claims.

Second, the NAR Defendants note that the complaint only mentions Mr. Shaner by name twice and is otherwise "silent with respect to any allegations against [him]." ECF No. 13, at 6. Instead of meeting her burden to allege particular conduct for which Mr. Shaner is allegedly liable, the NAR Defendants argue, Ms. Cordero's complaint simply relies upon a catch-all term, "Defendants," alleging that every defendant is liable for every action.

---

[10] In reviewing Ms. Cordero's complaint, the court concluded that Ms. Cordero attempted in good faith to identify which of the Defendants took a particular action in many circumstances. At other points, she alleges that "Defendants" took a particular action without specifying a particular defendant. But that information—for example, which of the NAR Defendants contacted the Constable Defendants and provided instructions on collecting the debt—is information that is solely within the Defendants' possession. It would make little sense, then, to dismiss Ms. Cordero's complaint before she has the opportunity to seek discovery on these issues, clarifying the factual questions that she pled with uncertainty in her complaint.

Ms. Cordero's complaint does not allege that Mr. Shaner is liable for Olson Shaner's conduct. So far as the court understands, she does not seek to pierce the corporate veil and hold him individually liable for the other NAR Defendants' alleged misconduct. Instead, the Ms. Cordero's complaint alleges that the NAR Defendants—N.A.R., Olson Shaner, and Randolph Shaner—each acted as the Constable Defendants' principal and directed the Constable Defendants' alleged misconduct in attempting to collect the debt. At the motion to dismiss stage, Ms. Cordero may plead alternative theories of liability; the fact that she may not yet know which of the NAR Defendants allegedly directed the Constable Defendants' actions does not provide a basis for the dismissal of her claims. At summary judgment or at trial, the NAR Defendants will each have the opportunity to demonstrate that they did not control the Constable Defendants' conduct. At that time, the NAR Defendants may renew their argument regarding Ms. Cordero's claims against Mr. Shaner. At this stage, however, the NAR Defendants' motion to dismiss claims against him is denied.

Having rejected the NAR Defendants' motion to dismiss Ms. Cordero's entire complaint based on agency or shotgun pleading, the court turns to the NAR Defendants' arguments related to Ms. Cordero's specific claims, which arise under § 1983, the UCSPA, and the common law of fraud.[11]

## IV.     SECTION 1983 CLAIM

"A claim pleaded under § 1983 requires '(1) deprivation of a federally protected right by (2) an actor acting under color of state law.'" *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th

---

[11] Ms. Cordero's complaint also contains a Fair Debt Collection Practices Act ("FDCPA") claim. The court does not address that claim on its own because the NAR Defendants have not raised any arguments specific to that claim.

Cir. 2016)). The NAR Defendants argue that Ms. Cordero failed to allege a violation of her rights that would suffice to support a § 1983 claim as a matter of law. Ms. Cordero, on the other hand, claims two deprivations of her federal rights that she believes support her § 1983 claim.

First, Ms. Cordero argues that she was deprived of her "rights to due process of law and equal protection of the laws under the Fourteenth Amendment" as well as "her Fourth Amendment rights, privileges, and immunities." ECF No. 18, at 10. She supports this argument with allegations that "[h]er property was effectively, but illegally, seized as a result of being notified by the constables of an impending sale of her property" and that "[b]y mailing collection letters without serving the Writ of Execution properly, Defendants also deprived Plaintiff of her due process rights to object and oppose the seizure in court." *Id.* But Ms. Cordero's complaint never alleges that she was in fact deprived of her personal property or that a seizure or sale of any property actually occurred. The court therefore concludes that Ms. Cordero's § 1983 claim cannot plausibly proceed upon the theory that she was deprived of her constitutional right to appear in a court hearing that did not occur and object to such proceedings that were threatened but never materialized. The court thus concludes that Ms. Cordero has not adequately plead a claim for relief under § 1983 based on a deprivation of her Fourth Amendment or Fourteenth Amendment rights.

Second, Ms. Cordero claims that the NAR Defendants unlawfully deprived her of rights guaranteed to her by the FDCPA. Federal statutory violations can provide the basis for a § 1983 claim only when certain conditions are met. The federal statute, for example, must not only proscribe certain conduct—it must confer an individual private right in order to support a § 1983 claim. *See, e.g., Hawkins v. County of Bent*, 800 F. Supp. 2d 1162, 1165 (D. Colo. 2011) (discussing whether the FNHRA confers an individual private right sufficient to state a claim for relief under § 1983). In *Blessing* and *Gonzaga Univ v. Doe*, the Supreme Court has developed a

18

three-part test to aid courts in determining which federal statutes confer an individual private right

in this manner. *See Blessing v. Freestone*, 520 U.S. 329, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997);

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 280, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). "After

*Gonzaga*," the Tenth Circuit has instructed, "an enforceable private right exists only if the statute

contains nothing 'short of an unambiguously conferred right' and not merely a vague benefit or

interest." *Mandy R., ex rel. Mr. and Mrs. R. v. Owens*, 464 F.3d 1139, 1147 (10th Cir. 2006)

(quoting *Gonzaga*, 536 U.S. at 283), *superseded by statute on other grounds as stated in Leonard

v. Mackereth*, No. 11-7418, 2014 U.S. Dist. LEXIS 16123 (E.D. Pa. Feb. 10, 2014). The court is

confident that the FDCPA provisions at issue in this case clear the bar to establish individual

private rights because the statute unambiguously creates a private right of action. *See* 15 U.S.C. §

1679g(a). But the fact that the FDCPA confers a private right is not sufficient to determine whether

Ms. Cordero may state a claim under § 1983 based only on the NAR Defendants' alleged violations

of the FDCPA. The court must also address whether the FDCPA preempts § 1983.

Generally, "[t]he precisely drawn, detailed enforcement structure of [a] later statute *must

be deemed to preempt*" a "general remedial statute" such as § 1983. *Polson v. Davis*, 895 F.2d 705,

710 (10th Cir. 1990) (citing *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1203-04 (6th

Cir. 1984)) (holding that Title VII furnishes a plaintiff with an independent cause of action and

that a violation of Title VII alone cannot demonstrate a deprivation of federal rights sufficient to

state a § 1983 claim as a result of Title VII's preemption of § 1983) (emphasis added). This rule

is subject to a limited exception, which holds that "a plaintiff may base a section 1983 claim on

actions proscribed by [a precisely drawn, detailed enforcement statute] where those actions also

violate the United States Constitution." *Id.* (citing *Grano v. Department of Dev.*, 637 F.2d 1073

(6th Cir. 1980)). The FDCPA is a detailed enforcement statute granting plaintiffs a private right of

action. Section 1983's general remedial statute is therefore preempted by the FDCPA for the purposes of this lawsuit. The exception to this rule does not apply because the court already concluded that the FDCPA violations that Ms. Cordero has already alleged would not amount to constitutional violations actionable under § 1983. The court therefore concludes that Ms. Cordero's § 1983 claim must be dismissed because she has not adequately alleged a violation of her federal rights sufficient to state a claim under that statute.[12]

## V.      UCSPA CLAIM

To state a claim under the UCSPA, a plaintiff must allege that "[(1)] a supplier [(2)] in connection with a consumer transaction" (3) knowingly or intentionally (4) engaged in "[a] deceptive act or practice." Utah Code Ann. § 13-11-4(1); *see also Martinez v. Best Buy Co.*, 2012 UT App 186, ¶ 4, 283 P.3d 521 (citing *Rawson v. Conover*, 2001 UT 24, ¶ 36, 20 P.3d 876). The NAR Defendants move to dismiss Ms. Cordero's UCSPA claim on three bases.

First, the NAR Defendants assert that vicarious liability is not permitted under the UCSPA. The NAR Defendants cite *Fed. Trade Comm'n v. Nudge, LLC*, insisting that this is a settled issue of law. ECF No. 13, at 10 (citing *Fed. Trade Comm'n v. Nudge, LLC*, Case No. 2:19-cv-867, 2022 WL 2132695, at **53–54 (D. Utah June 14, 2022)). In *Nudge*, however, the district court did not reach the same conclusion. Instead, the court stated only that the defendants in that case could not be held "*directly* liable for violating the UCSPA" but that those defendants could be held liable for violating the UCSPA "only if there is another legal basis for doing so[,]" noting that the UCSPA does not contain any "provision regarding vicarious liability." *Nudge*, 2022 U.S. Dist. LEXIS 107548, at *136.

---

[12] The court would dismiss Ms. Cordero's claim even if she had adequately pled a deprivation of her federal rights. At oral argument, neither party disputed the NAR Defendants' assertion that § 1983 does not permit claims pled through vicarious liability. *See* ECF No. 13, at 8 (citing *Ponce v. Brooksby*, Case No. 4:23-cv-80, 2023 WL 7168781, *4 (D. Utah Oct. 30, 2023) (quoting *Iqbal*, 556 U.S. at 676).

In the present case, Ms. Cordero has another legal basis to state a UCSPA claim against the NAR Defendants: she alleges that the NAR Defendants are liable under a theory of *respondeat superior*. Contrary to the NAR Defendants' contention, nothing in the UCSPA's text forecloses this argument.[13] Under the Act, each of the NAR Defendants is a "supplier," which is defined to mean a "seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." Utah Code Ann. § 13-11-3. The Act then gives consumers a private right of action to bring a civil claim against any Supplier who knowingly or intentionally violated the Act. *Id.* § 13-11-6(1) ("[P]ersonal jurisdiction over a supplier may be acquired in a civil action or proceeding instituted in the district court by the service of process[.]"). Ms. Cordero alleges that the NAR Defendants knowingly or intentionally violated the UCSPA by hiring the Constable Defendants and directing them to collect the debt in a manner violative of the Act. *Id.*, ¶¶ 15, 31–33. Consistent with the UCSPA's text, Ms. Cordero has therefore stated a claim that the NAR Defendants are liable for the Constable Defendants' conduct under a theory of *respondeat superior*. The court thus rejects the NAR Defendants' argument that they cannot be held liable under the UCSPA as a matter of law.

Second, the NAR Defendants argue that Ms. Cordero's UCSPA claim is barred by Utah's judicial proceedings privilege. The judicial proceedings privilege protects statements and conduct made during the course of litigation in order "to promote the integrity of the adjudicatory proceeding and its truth finding processes." *V3 World Management, Inc. v. Synergy Worldwide, Inc.*, No. 2:16-cv-323, 2019 WL 575889, *2 (D. Utah Feb. 12, 2019) (quoting *Pratt v. Nelson*,

---

[13] The court likewise finds no indication in the UCSPA's "plain language" that suggests that the statute is in conflict with the common law doctrine of *respondeat superior*. *Cf. Bishop v. Gentec*, 2002 UT 36, ¶¶ 10–11, 48 P.3d 218. Instead, the court finds that the common law doctrine fits in line with the UCSPA's clear dictate that it "shall be construed liberally to promote" the protection of "consumers from suppliers who commit deceptive and unconscionable sales practices." *Fell v. Alco Cap. Grp. LLC*, 2023 UT App 127, ¶¶ 25–26, 538 P.3d 1249 (quoting Utah Code Ann. § 13-11-2(2)).

2007 UT 41, ¶ 27, 164 P.3d 366 (Utah 2007)). The judicial proceedings privilege applies where statements are "(1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) [are] made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *DeBry v. Godbe*, 1999 UT 111, ¶ 11, 992 P.2d 979 (quoting *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997)) (internal quotations omitted).

Several judges on this court have considered the question of whether Utah's judicial proceedings privilege bars UCSPA claims against attorneys or other parties engaged in debt collection. In *Johnson v. Riddle*, the court concluded that the judicial proceedings privilege applied to "all claims arising from qualifying statements," including UCSPA claims. *Johnson v. Riddle*, No. 2:98-CV-599-TS, 2007 U.S. Dist. LEXIS 11101, at *8–9 (D. Utah 2007). The plaintiff subsequently filed a motion to alter or amend the judgment, arguing that the judicial proceedings privilege had never been applied to a statutory cause of action that did not mirror a common law claim. *See* 2007 U.S. Dist. LEXIS 43411, 2007 WL 1732400 (D. Utah June 14, 2007). The court then decided to certify the question of the judicial proceedings privilege's applicability to UCSPA to the Utah Supreme Court. *Id.* Before the Utah Supreme Court could decide the question, however, the parties settled their dispute.

In later cases, judges on this court have come to something of a consensus that Utah's judicial proceedings privilege does not bar UCSPA claims. In *Brown v. Constantino*, the court reached that same conclusion for two reasons. *Brown v. Constantino*, No. 2:09-CV-00357-DAK, 2009 U.S. Dist. LEXIS 100552, at *9–14 (D. Utah Oct. 26, 2009). First, the court noted that the Utah Supreme Court had never applied the judicial proceedings privilege to any statutory cause of action that was not merely a codification of a common law claim. *Id.*, at *12–13 (citing *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 73, 70 P.3d 17). Second, the court drew an

22

analogy between the UCSPA and the FDCPA, noting that the statutes' similarities suggested that the judicial proceedings privilege would likely not apply to the UCSPA because it does not apply to the FDCPA. *Id.*, at *13 (citing *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) (holding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*") (emphasis added). The court therefore concluded that the plaintiff's UCSPA claim was not barred by the judicial proceedings privilege despite the defendant's use of litigation tools to collect on a debt. *Id.*, at *13–14. In *Chamberlain v. Crown Asset Mgmt.*, the court reiterated the same reasoning before concluding that the judicial proceedings privilege did not apply to FDCPA or UCSPA claims. *Chamberlain v. Crown Asset Mgmt.*, 608 F. Supp. 3d 1091, 1103 (D. Utah 2022) (citing *Brown*, 2009 U.S. Dist. LEXIS 100552, at *5; *Heintz*, 514 U.S. at 299).

This court agrees with the reasoning articulated in *Brown* and *Chamberlain* and reaches the same conclusion: Utah's judicial proceedings privilege does not apply to claims brought against debt collectors under the UCSPA.[14] As a result, the court denies the NAR Defendants' motion to dismiss Ms. Cordero's UCSPA claim because the court rejects the NAR Defendants' arguments that they cannot be held liable for the Constable Defendants' conduct under the Act or that the claim is barred by the judicial proceedings privilege.

## VI.    FRAUD CLAIM

In order to plead a fraud claim, a plaintiff must allege each of nine elements:

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b)

---

[14] If the court did not reach this conclusion, it would still be inclined to conclude that the judicial proceedings privilege does not apply in this case. The Defendants have not explained why this privilege, which applies to "judges, jurors, witnesses, litigants, and counsel" should also apply to constables. *See Krouse v. Bower*, 2001 UT 28, 20 P.3d 895, 898. Relatedly, the court is not inclined to find that constables' debt collection efforts, conducted after a state court issued a writ of execution, are "during or in the course of a judicial proceeding." *See Krouse*, 20 P.3d at 898 (internal quotation marks and citations omitted).

made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d 930, 936. The NAR Defendants seek to dismiss Ms. Cordero's fraud claim on the basis that she failed to adequately plead the damages and detrimental reliance elements of her claim.

In her complaint, Ms. Cordero alleges that because she believed the Constable Defendants' threats to sell her property to collect on the judgment against her, she "hired an attorney to defend her from those threats and demands." Compl., ¶ 81. "As a direct and proximate result of Defendants' acts and practices," Ms. Cordero alleges, she "incurred attorney's fees and costs and suffered concrete and actual personal injury damages." *Id.*, ¶ 89. Ms. Cordero also alleges that she "suffered from headaches, sleepless nights, anxiety, shortness of breath, confusion, anger, and other similar personal physical injuries as a result of the Defendants' acts and practices at issue" as well as "deprivations of her Constitutional and civil rights, invasion of privacy, intrusion upon her seclusion, emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, fear, outrage, and other personal injuries and emotional distress." *Id.*, ¶¶ 90–91.

The NAR Defendants insist that Ms. Cordero's allegations are insufficient to allege the detrimental reliance element of her fraud claim. ECF Nos. 13, at 10; 21, at 5. In their motion, the NAR Defendants argue that Ms. Cordero merely alleges that she "hired an attorney to represent [her] in litigation[.]" ECF No. 13, at 10. But in her complaint, Ms. Cordero does not allege that she retained counsel to represent her in the underlying state court proceedings. Instead, she alleges that she retained counsel only "to oppose Defendant's collection efforts" after the Constable Defendants are alleged to have falsely threatened to seize and sell Ms. Cordero's personal property.

24

Compl., ¶¶ 137–140. The NAR Defendants also argue that Ms. Cordero "does not even allege that she has paid her attorney a single penny" and consequently cannot rely upon her allegation of retaining counsel to demonstrate *detrimental* reliance. ECF No. 21, at 5. Ms. Cordero alleges that she "incurred attorney's fees and legal costs" in reliance on the Constable Defendants' statements made while attempting to collect on the judgment. Compl., ¶ 140. The court is not persuaded by the NAR Defendants' position that *paying* attorney's fees in reliance on an allegedly false threat of collection activities would constitute detrimental reliance while *incurring* attorney's fees does not. The court therefore rejects the NAR Defendants' motion to dismiss Ms. Cordero's fraud claim. Whether Ms. Cordero's fraud claim presents a triable issue will depend on the facts that emerge as this case proceeds.

Having considered each of the NAR Defendants' arguments in support of their motion to dismiss, the court concludes that the motion to dismiss (ECF No. 13) is granted in part and denied in part. The court therefore proceeds to consider the NAR Defendants' two alternative motions, which ask this court to certify an issue of law to the Utah Supreme Court and stay this action.

## VII.   ALTERNATIVE MOTION TO CERTIFY

Rule 41(a) of the Utah Rules of Appellate Procedure provides that "the Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court . . . if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain." Utah R. App. P. 41(a).

Generally, certification is appropriate "where the legal question at issue is novel and the applicable state law is unsettled." *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). When exercising jurisdiction over state claims, however, federal courts often "have the duty to decide questions of state law even if

25

difficult or uncertain." *Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (citing *Meredith v. Winter Haven*, 320 U.S. 228, 235, 88 L. Ed. 9, 64 S. Ct. 7 (1943)). As a result, certification "is never compelled." *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1001 (10th Cir. 2005) (citing *Lehman Bros.*, 416 U.S. at 390–91).

The NAR Defendants request that the following question be certified to the Utah Supreme Court:

> Whether Utah's judicial proceedings privilege bars state statutory claims, such as a claim asserted under the UCSPA, asserted against parties and counsel where those claims are predicated exclusively on statements made, and conduct engaged in, during the course of and in connection with litigation[.]

ECF No. 14, at 2. As noted above, Utah courts have not directly answered this question. Other judges on this court, however, have previously found sufficient indications in Utah law to conclude that Utah's judicial proceedings privilege does not bar newly-created state statutory claims. *See, e.g., Brown*, 2009 U.S. Dist. LEXIS 100552, at *9–14; *Chamberlain*, 608 F. Supp. 3d at 1103. In light of those persuasive authorities, this court does not find that the NAR Defendants' proposed question presents such a novel and unsettled question of state law that certification is necessary. As a result, the NAR Defendants' alternative motion to certify an issue of law to the Utah Supreme Court is denied.

## VIII.   ALTERNATIVE MOTION TO STAY

The NAR Defendants' final motion requests that this case be stayed "*[i]n the event this Court grants the motion to certify*[.]" ECF No. 15, at 1 (emphasis added). Because the court has denied the NAR Defendants' motion to certify, it also denies as moot the NAR Defendants' related motion to stay.

**CONCLUSION AND ORDER**

For the reasons stated herein, the NAR Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART AND DENIED IN PART and the NAR Defendants' Alternative Motion to Certify Issue of State Law to the Utah Supreme Court (ECF No. 14) and Alternative Motion to Stay (ECF No. 15) are DENIED. Specifically:

1. The NAR Defendants' motion to dismiss (ECF No. 13) is **GRANTED IN PART** to the extent that it requests the dismissal of Ms. Cordero's § 1983 claim against the NAR Defendants. The NAR Defendants' motion to dismiss (ECF No. 13) is **DENIED IN PART** in all other respects.

2. The NAR Defendants' alternative motion to certify a question of law to the Utah Supreme Court is **DENIED**.

3. The NAR Defendants' alternative motion to stay this case in the event that the court certifies a question of law to the Utah Supreme Court is **DENIED AS MOOT**.

Signed July 12, 2024

BY THE COURT

Jill N. Parrish
United States District Court Judge