UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| HEIDI CORDERO,<br><br>        Plaintiff,<br><br>v.<br><br>OLSON ASSOCIATES P.C. dba OLSON SHANER; RANDOLPH CHIP SHANER JR.; ROB KOLKMAN; CONSTABLE KOLKMAN LLC; N.A.R. INC.; and JOHN DOES 1-5,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DOC. NO. 49), AND**<br>**(2) GRANTING DEFENDANTS' MOTION RE: PROVIDING MEDICAL RECORDS TO ALL COUNSEL OF RECORD**<br><br>Case No. 2:23-cv-00756<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Heidi Cordero filed this action alleging Defendants collectively engaged in unlawful debt collection practices.[1]  Ms. Cordero has filed a motion for a protective order, seeking various forms of relief.[2]  Defendants oppose Ms. Cordero's motion.[3]  Olson Associates, P.C.; Randolph Chip Shaner Jr.; and N.A.R., Inc. (collectively, the

---

[1] (*See* Compl., Doc. No. 2.)

[2] (*See* Mot. for Protective Order (Pl.'s Mot.), Doc. No. 49.)

[3] (*See* Defs. Olson Assocs., P.C., Randolph Chip Shaner, and N.A.R., Inc.'s Mem. in Opp'n to Pl.'s Mot. for Protective Order (Law Firm Defs.' Opp'n), Doc. No. 54; Constable Defs.' Opp'n to Mot. for Protective Order (Constable Defs.' Opp'n), Doc. No. 55.)

Law Firm Defendants) have also filed a motion seeking competing relief.[4]  Specifically at issue are Ms. Cordero's medical records and various disputes related to her deposition topics and location.

Ms. Cordero's motion is granted in part and denied in part, and the Law Firm Defendants' motion is granted.  First, because the Standard Protective Order permits disclosure of information obtained in discovery to other counsel in this case, the Law Firm Defendants' motion for permission to disclose relevant documents to other counsel is granted, and Ms. Cordero's request to prohibit such disclosure is denied.  Relatedly, Ms. Cordero's request for a protective order limiting deposition questions about her medical information is unwarranted at this stage, where her medical condition is at issue and it is unclear what questions will be asked.  However, a protective order preventing questions about Ms. Cordero's financial condition or the validity of the underlying debt is necessary, where these topics are irrelevant.  Finally, because Ms. Cordero is a key witness whose credibility is at issue, her request for a remote deposition is denied.

### 1. Ms. Cordero's Medical Records

*Background.*  In her complaint, Ms. Cordero asserts Defendants' actions caused emotional distress and physical injury damages.[5]  In response to an interrogatory asking

---

[4] (Defs. Olson Assocs., P.C., Randolph Chip Shaner, and N.A.R., Inc.'s Mot. re: Providing Med. Records to All Counsel of R. and Other Related Relief (Law Firm Defs.' Mot.), Doc. No. 50.)

[5] (*See* Compl. ¶¶ 90–91, Doc. No. 2 ("Plaintiff suffered from headaches, sleepless nights, anxiety, shortness of breath, confusion, anger, and other similar personal physical injuries as a result of the Defendants' acts and practices at issue.  Plaintiff's

Ms. Cordero to identify the healthcare providers who treated her for these injuries, Ms. Cordero identified several providers, including Northeastern Counseling Center (NCC).[6] The Law Firm Defendants then served on all parties a notice of intent to serve a subpoena on NCC.[7]  Ms. Cordero initially objected to the scope of the subpoena but, after the Law Firm Defendants modified the subpoena, Ms. Cordero's counsel approved the subpoena language.[8]  The Law Firm Defendants served the subpoena, and NCC produced responsive documents—each marked with a boilerplate confidentiality stamp:

> ***CONFIDENTIAL*** The information which has been disclosed to you is confidential and you are prohibited from making any further disclosure of it without the knowledge and specific written consent of the persons to whom it pertains.  42 CFR Part 2.[9]

Attempting to comply with NCC's confidentiality stamp, the Law Firm Defendants requested Ms. Cordero's consent to provide the documents to counsel for the other defendants in this case—Rob Kolkman and Constable Kolkman LLC (collectively, the Constable Defendants).[10]  Ms. Cordero declined consent, objecting that the records are

---

damages also include . . . emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, fear, outrage, and other personal injuries and emotional distress.").)

[6] (*See* Law Firm Defs.' Opp'n 4, Doc. No. 54.)

[7] (*Id* at 3–4.)

[8] (*See id.* at 5 ("[Counsel for Ms. Cordero] expressly approved the revised language, stating 'I approve.'").)

[9] (*See id.* at 1.)  42 C.F.R. Part 2 protects the confidentiality of records related to substance abuse disorder treatment in certain circumstances.  Ms. Cordero does not make a claim of protection under 42 C.F.R. Part 2.

[10] (*See id.* at 5.)

"confidential, private, protected, and privilege[d] under the doctor/patient privilege."[11] The Law Firm Defendants again asked permission to produce the documents to the Constable Defendants' counsel for use in Ms. Cordero's deposition, but Ms. Cordero again refused to consent.[12]  Ms. Cordero then designated the records "attorneys eyes only" under the Standard Protective Order (SPO) governing this case.[13]

In her motion, Ms. Cordero seeks an order protecting her from the Law Firm Defendants' "repeated attempts to force her to waive her medical privacy rights."[14] While Ms. Cordero "has no objection to the reasonable limited production and use of relevant medical information," she argues the Law Firm Defendants cannot demand "a blanket authorization to share, disclose, and distribute" the medical records obtained through subpoena.[15]  Ms. Cordero also asks the court to "admonish [the Law Firm Defendants' counsel] for his conduct and limit the scope of the medical records and

---

[11] (*See id.* at 6.)  Ms. Cordero does not assert the doctor/patient privilege in her motion or her opposition to the Law Firm Defendants' motion—likely because no such privilege exists under federal law.  *See Becker v. Securitas Sec. Servs. USA, Inc.*, No. 06-2226, 2007 U.S. Dist. LEXIS 15818, at *7 (D. Kan. Mar. 2, 2007) (unpublished) ("It is well settled that there is no federal common law physician-patient privilege.  There is also no basis for the privilege under any federal statutory law." (citations omitted)).

[12] (*See* Law Firm Defs.' Opp'n 6, Doc. No. 54.)

[13] (*Id.*); *see* Standard Protective Order for Cases Filed Before Dec. 1, 2023 (SPO), https://www.utd.uscourts.gov/sites/utd/files/forms/Standard_Protective_Order_Cases_Filed_Before_12-1-2023.pdf [https://perma.cc/BXF9-LUUY] .

[14] (Pl.'s Mot. 3–4, Doc. No. 49.)

[15] (*Id.*)

information he discloses and distributes to only that which is relevant to the damages at issue."[16]

On the other hand, the Law Firm Defendants move for an order permitting their counsel to (1) provide the NCC records to the Constable Defendants' counsel, and (2) "otherwise use" the records in this case, including at Ms. Cordero's deposition—all subject to the SPO.[17]  The Law Firm Defendants contend the "production, dissemination and use of the medical records in this case are all governed by the Court's [Standard] Protective Order," but they seek an order clarifying their obligations in light of Ms. Cordero's objections.[18]  In support of their motion, the Law Firm Defendants note the records were obtained through a subpoena Ms. Cordero's counsel approved.[19]  The Law Firm Defendants also argue the documents are relevant because Ms. Cordero placed her medical condition at issue by seeking damages for emotional and physical injuries.[20]  Ms. Cordero opposes the Law Firm Defendants' motion, asserting the same arguments she raised in her motion.[21]

---

[16] (*Id.* at 4.)

[17] (Law Firm Defs.' Mot. 1, Doc. No. 50.)

[18] (*Id.* at 10.)  The Law Firm Defendants do not oppose Ms. Cordero's "attorneys eyes only" designation.  (*See id.* at 7.)

[19] (*Id.* at 9.)

[20] (Law Firm Defs.' Opp'n 12–13, Doc. No. 54.)

[21] (*See* Opp'n to Mot. to Disclose Med. Info. (Pl.'s Opp'n), Doc. No. 56.)

*Analysis.* Under Rule 26 of the Federal Rules of Civil Procedure, the court may issue a protective order for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[22] Pursuant to the Scheduling Order in this case and Rule 26-2(a) of the Local Rules of Civil Practice, the SPO governs the distribution of information produced during discovery in this case.[23] The SPO permits a party to designate confidential health or medical information as attorneys' eyes only (AEO).[24] Documents designated as AEO may be disclosed only to qualified recipients—which includes "counsel of record for the parties in this action," "court reporters," and "persons operating video recording equipment at depositions."[25]

Because Ms. Cordero designated the medical records at issue as AEO, the Law Firm Defendants' counsel cannot provide the documents to Defendants themselves— but they may still be disclosed to "qualified recipients," which includes other counsel in

---

[22] Fed. R. Civ. P. 26(c)(1).

[23] (*See* Scheduling Order 2, Doc. No. 39 ("The Parties agree to abide by the District of Utah's standard protective order under DUCivR 26-2(a) to govern discovery in this case.")); DUCivR 26-2(a) (providing the Standard Protective Order "applies in every case involving the disclosure of any information designated as confidential, unless the court orders otherwise," and "is effective by operation of this rule at the time a case is filed and does not need to be entered in a case docket to be effective").

[24] *See* SPO ¶ 2(a)–(b).

[25] *See id.* ¶ 5 ("Information that has been designated [AEO] shall be disclosed by the receiving party only to Qualified Recipients."); *id.* ¶ 6(a)(1)–(2) (defining "Qualified Recipients" to include "counsel of record for the parties in this action," "court reporters," and "persons operating video recording equipment at depositions").

this case.[26]  The fact that NCC included a boilerplate confidentiality stamp on the documents it produced is irrelevant—the SPO governs the dissemination of documents in this case.

To the extent Ms. Cordero claims the NCC records are irrelevant, the proper remedy would have been a motion to quash the subpoena before NCC produced responsive documents.[27]  Instead, her counsel approved the subpoena language. Moreover, where Ms. Cordero claims damages for an extensive catalog of emotional and physical damages[28]—and specifically identified NCC as a treating provider in her

---

[26] *See id.* ¶¶ 5, 6(a)(1).  The SPO also permits parties in multi-defendant cases to designate documents as "CONFIDENTIAL INFORMATION – NOT TO BE DISCLOSED TO OTHER DEFENDANTS."  *See id.* ¶ (4)(h).  Ms. Cordero has not made any such designation.  Moreover, such a designation is inappropriate—where Ms. Cordero alleges all the defendants caused her emotional and physical injuries, all parties' counsel are entitled to records of treatment for these injuries.

[27] *See Goldwater Bank, N.A. v. Elizarov*, No. 5:21-cv-00616, 2023 U.S. Dist. LEXIS 116269, at *8–9 (C.D. Cal. May 10, 2023) (unpublished) ("The proper procedure for giving effect to [the defendants' relevancy] objections would have been to file a motion to quash the subpoenas or seek a protective order *before the third party produced responsive material*." (emphasis added)).  Ms. Cordero may also object to their use at trial or in dispositive motions.

[28] (*See* Compl. ¶¶ 90–91, Doc. No. 2 ("Plaintiff suffered from headaches, sleepless nights, anxiety, shortness of breath, confusion, anger, and other similar personal physical injuries as a result of the Defendants' acts and practices at issue.  Plaintiff's damages also include . . . emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, fear, outrage, and other personal injuries and emotional distress."); *see also* Ex. A to Law Firm Defs.' Opp'n, Pl.'s Initial Disclosures, Doc. No. 54-1 at 26 ("Awards for 'garden variety' emotional distress damages 'generally merit $30,000 to $125,000 awards.'  Other matters with more egregious conduct like what occurred in this case can reach well into the seven-figure range." (citations omitted)).)

discovery responses—her mental health records are discoverable.[29]  She placed her physical and emotional condition at issue.  Ms. Cordero's privacy concerns are adequately addressed by the SPO, including her AEO designation.

Accordingly, Ms. Cordero's motion is denied to the extent she seeks an order preventing the Law Firm Defendants from disclosing the NCC records to the Constable Defendants' counsel, the court reporter, or the deposition videographer.  Conversely, the Law Firm Defendants' motion is granted.  The Law Firm Defendants may disclose the documents they obtained from NCC to qualified recipients (as defined by the SPO[30]) and they may use the documents during Ms. Cordero's deposition, subject to the terms of the SPO.[31]

### 2. Deposition Topics: Medical Information

*Background*.  Ms. Cordero also requests a protective order preventing Defendants from "broadly inquiring into medical issues that have no relevance to this matter" during Ms. Cordero's deposition.[32]  Ms. Cordero contends a protective order is

---

[29] *See Alsaadi v. Saulsbury Indus., Inc.*, No. 2:23-cv-291, 2024 U.S. Dist. LEXIS 26214, at *13 (D.N.M. Feb. 13, 2024) (unpublished) ("Because Plaintiff seeks damages for emotional distress, information relating to her mental health is relevant and discoverable.").

[30] *See* SPO ¶ 6(a)(1)–(2) (defining "Qualified Recipients" to include "counsel of record for the parties in this action," "court reporters," and "persons operating video recording equipment at depositions").

[31] The court makes no determination as to whether the NCC records are admissible in evidence at trial or other stages of the litigation.

[32] (Pl.'s Mot. 1–3, Doc. No. 49.)

necessary where Defendants have "repeatedly demanded [she] waive her medical privacy rights" (as discussed above).[33]  Ms. Cordero also asserts that "in a previous deposition involving the same counsel as in this [case], counsel for the Defendants repeatedly inquired deep into private medical issues that were well[ ]outside the scope of the claims at issue as Plaintiff had not received any medical treatment for her emotional distress."[34]

Because "Defendants' counsel have already demonstrated an inclination toward seeking irrelevant medical details," Ms. Cordero requests an order limiting the scope of the deposition to "testimony regarding the injuries caused by their misconduct alleged in this case."[35]  She argues "[a]ny inquiry into unrelated treatment or history should be prohibited," and her "unrelated mental health, pre-existing conditions, and other similar sensitive topics should similarly be forbidden."[36]

Defendants argue Ms. Cordero's request is premature, because her deposition has not yet occurred—"[n]either [Ms. Cordero], her counsel, or this Court has any idea what questions might ultimately be asked."[37]  Defendants also contend Ms. Cordero "placed her mental, emotional and physical condition at issue" by "claiming a host of

---

[33] (*Id.* at 1.)

[34] (*Id.* at 2.)

[35] (*Id.* at 3.)

[36] (*Id.*)

[37] (Law Firm Defs.' Opp'n 11, Doc. No. 54.)  The Constable Defendants incorporated the Law Firm Defendants' arguments by reference.  (*See* Constable Defs.' Opp'n 1, Doc. No. 55.)

emotional distress and physical injuries in this case which go far beyond garden variety emotional distress damages."[38]

*Analysis*.  At this stage, Ms. Cordero has not justified an order restricting deposition questioning about her medical information.  Her argument that Defendants have "repeatedly demanded [she] waive her medical privacy rights"[39] fails because, as explained above, Defendants are entitled to seek relevant information regarding Ms. Cordero's alleged injuries.  Additionally, the Law Firm Defendants' counsel's attempts to obtain Ms. Cordero's consent to share the subpoenaed documents appear to have been good-faith efforts to address NCC's confidentiality stamp.

Ms. Cordero's second argument—that Defendants' counsel in another case inappropriately questioned the plaintiff about her medical issues—also fails on multiple grounds.  At the outset, Ms. Cordero does not identify the other case.  Nor does she explain what questions were asked or why a dispute in a different case bears any relevance here.  Moreover, Ms. Cordero argues the questions in that case were inappropriate because that plaintiff "had not received any medical treatment for her emotional distress."[40]  But in this case, Ms. Cordero received treatment—making her medical information relevant to the extent it relates to her injuries.  Similarly, any lack of

---

[38] (Law Firm Defs.' Opp'n 12, Doc. No. 54.)

[39] (Pl.'s Mot. 1, Doc. No. 49.)

[40] (*Id.* at 2.)

injury may be relevant, as well as any preexisting condition which might aggravate any claimed injury.

Finally, where neither Ms. Cordero nor the court knows what questions Defendants might ultimately ask during the deposition, a protective order is inappropriate at this stage.[41]  Ms. Cordero's privacy concerns are sufficiently addressed by the SPO.[42]  Accordingly, Ms. Cordero's motion is denied to the extent she seeks an order limiting deposition questioning regarding her medical information.

### 3.  Deposition Topics: Financial Information

*Background*.  Next, Ms. Cordero seeks an order prohibiting the Constable Defendants' counsel from questioning her about her general financial condition and the validity of the debt underlying this case.[43]  Ms. Cordero argues that during a deposition

---

[41] (*See* Law Firm Defs.' Opp'n 11, Doc. No. 54); *see also, e.g.*, *City of Lincoln v. County of Placer*, No. 2:18-cv-00087, 2021 U.S. Dist. LEXIS 248765, at *9–10 (E.D. Cal. Jan. 3, 2022) (unpublished) ("As to concerns about protected information, . . . . [t]o the extent questioning moves in the direction of such testimony, objections can be raised at the deposition. . . . [I]t would be premature to issue a [prospective] protective order on the basis that such information might possibly come up at the actual deposition.").

[42] *See* SPO ¶ 4(d) ("A party may designate information disclosed at a deposition as CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY by requesting the reporter to so designate the transcript at the time of the deposition.").  If harassment occurs during the deposition, Ms. Cordero may file a motion under Rule 30.  *See* Fed. R. Civ. P. 30(d)(3)(A) ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").  However, Ms. Cordero should not file such a motion absent objective evidence of impropriety.  *See infra* section entitled "Professionalism."

[43] (Pl.'s Mot. 7–8, Doc. No. 49.)

in another of her counsel's debt collection cases, the Constable Defendants' former counsel[44] "grilled" the plaintiff "extensively about the underlying debt and her past and current financial condition."[45]  Ms. Cordero contends such questioning is improper because her "financial condition and the validity of the underlying debt are irrelevant to the claims and defenses in this case."[46]

The Constable Defendants argue Ms. Cordero "opened the door to questions concerning" the underlying debt by alleging they attempted to collect "amounts, costs, and fees that were not owed, authorized by the judgment, or permitted by law."[47]  As to Ms. Cordero's financial condition, the Constable Defendants argue Ms. Cordero alleges a large range of emotional and physical damages without providing allegations as to the specific cause of each injury.[48]  The Constable Defendants contend they are "left guessing whether those purported injuries were in fact caused by some alleged conduct from [the] Constable Defendants, or some other fact or circumstance, which certainly could include personal finances."[49]

---

[44] After Ms. Cordero's motion was briefed, the Constable Defendants obtained new counsel.  (*See* Substitution of Counsel, Doc. No. 60.)  Although Ms. Cordero's request seems to be aimed specifically at the Constable Defendants' former counsel, the court will address her arguments.

[45] (Pl.'s Mot. 7, Doc. No. 49.)

[46] (*Id.*)

[47] (Constable Defs.' Opp'n 2, Doc. No. 55 (quoting Compl. ¶ 104, Doc. No. 2).)

[48] (*See id.* at 3.)

[49] (*Id.*)

*Analysis*.  Defendants may not question Ms. Cordero about her personal financial condition or the validity of the underlying debt.  First, the validity of the underlying debt has no relevance to the claims or defenses in this case.[50]  Because an "FDCPA claim []" does not focus on the validity of the debt, but instead on the use of unfair methods to collect it,"[51] courts have repeatedly emphasized that "[w]hether the debt itself is valid, and thus recoverable, is not relevant to Plaintiffs' FDCPA" claims.[52]  Where Ms. Cordero alleges Defendants violated the FDCPA by charging fees not authorized by the debt judgment,[53] the *amount* of the underlying debt is relevant—to the extent it shows whether Defendants added unauthorized fees.  But this allegation does not make the *validity* of the underlying debt relevant.

Similarly, Ms. Cordero's general financial condition is irrelevant.  The fact that Ms. Cordero claims emotional distress damages does not entitle the Constable

---

[50] *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to information "that is relevant to any party's claim or defense and proportional to the needs of the case").

[51] *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015) (internal quotation marks and citation omitted); *see also Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.").

[52] *Cotte & Mercedes Hidalgo v. CVI SGP Acquisition Tr.*, No. 2:21-cv-00299, 2022 U.S. Dist. LEXIS 27981, at *8 (D. Utah Feb. 15, 2022) (unpublished); *see also, e.g.*, *Rodriguez v. Cascade Collections LLC*, 532 F. Supp. 3d 1099, 1120 (D. Utah 2021) ("[L]iability for the underlying debt bears no relation to the issue of whether the [debt collector] violated the FDCPA."); *Krezic v. Advanced Endodontics of Buffalo, PC*, No. 1:20-cv-1166, 2022 U.S. Dist. LEXIS 79280, at *10–11 (W.D.N.Y. May 2, 2022) (unpublished) ("In FDCPA cases . . . the veracity of the underlying debt is wholly irrelevant in determining whether the debt collector's behavior violated the statute.").

[53] (*See* Compl. ¶ 104, Doc. No. 2.)

Defendants to broadly inquire into her personal financial circumstances.[54]  Given the Constable Defendants' incorrect assertion that these topics are relevant, a protective order is appropriate.  Accordingly, to the extent Ms. Cordero requests an order preventing the Constable Defendants from inquiring into her personal financial condition or the validity of the underlying debt, her motion is granted.  The Constable Defendants may not pursue these topics during Ms. Cordero's deposition.

### 4.  Deposition Location

*Background*.  Ms. Cordero also seeks an order requiring her deposition to be held remotely by videoconference.[55]  In January 2025, the Law Firm Defendants issued a deposition notice, scheduling Ms. Cordero's deposition in Salt Lake City at their counsel's office.[56]  On the Friday before the Monday deposition, Ms. Cordero's counsel told the Law Firm Defendants that Ms. Cordero was ill and could not attend her deposition.[57]  In the same conversation, Ms. Cordero's counsel objected to the deposition being taken in Salt Lake City—instead requesting a videoconference

---

[54] *See Hellard v. Mid Century Ins. Co.*, No. 19-CV-43, 2020 U.S. Dist. LEXIS 99943, at *2 (N.D. Okla. June 8, 2020) (unpublished) (denying motion to compel discovery of the plaintiff's bank statements because the plaintiff's "financial information is not relevant to any matter at issue").

[55] (Pl.'s Mot. 4–7, Doc. No. 49.)

[56] (Law Firm Defs.' Opp'n 8, Doc. No. 54.)

[57] (*Id.*)

deposition because Ms. Cordero lives in Vernal, Utah.[58]  The parties could not agree on the location of the deposition, but they agreed to reschedule it.[59]

In a later conversation, the Constable Defendants' counsel suggested the deposition occur in person in Vernal.[60]  The Law Firm Defendants' counsel "indicated he would consider taking [the] deposition in Vernal, but was concerned about the additional cost . . . associated with the Court reporter and videographer having to travel to Vernal."[61]  Ms. Cordero's counsel (who lives in St. George) stated "it would be even more inconvenient for him to travel to Vernal than to Salt Lake City," but "said he might be willing to consider paying those costs" and asked for a cost estimate.[62]  After the Law Firm Defendants sent cost estimates, Ms. Cordero's counsel again requested a videoconference deposition.[63]  The Law Firm Defendants declined, and served an amended deposition notice, scheduling the deposition in person in Salt Lake City.[64]  The parties then agreed on a modified date for the deposition, and Ms. Cordero's

---

[58] (*Id.*)

[59] (*Id.*)

[60] (*Id.* at 9.)

[61] (*Id.*)

[62] (*Id.*)

[63] (*Id.*)

[64] (*Id.*)

counsel stated "[w]e will travel to Salt Lake City despite the hardship it causes [Ms. Cordero]."[65]

A week before the deposition, Ms. Cordero filed her motion for a protective order, asking the court to order a remote deposition.[66]  Ms. Cordero argues she should not be forced to travel to Salt Lake City because she "is on a fixed income and cannot afford the expenses involved with travel," she "has ongoing medical issues (degenerative bone and disk disease in her back and neck) that make it challenging and painful for her to drive long distances," and "she has difficulty seeing in the dark and will therefore need to enlist a co-driver to help her get to Salt Lake."[67]  Ms. Cordero also notes a Salt Lake City deposition would also require her counsel (and the Constable Defendants' counsel) to travel from St. George to Salt Lake City.[68]

Defendants argue Ms. Cordero should be deposed in person because she is a "key witness" in this case, and her claims for emotional and physical damages put her credibility at issue.[69]  While they acknowledge "there would no doubt be some inconvenience and relatively minor expense associated with traveling from Vernal to Salt Lake City for deposition," they argue Ms. Cordero "has failed to demonstrate that

---

[65] (*Id.* at 10.)

[66] (Pl.'s Mot. 4–7, Doc. No. 49.)

[67] (*Id.* at 5.)

[68] (*Id.* at 5–6.)

[69] (Law Firm Defs.' Opp'n 14–15, Doc. No. 54.)  The Constable Defendants incorporated the Law Firm Defendants' arguments by reference.  (*See* Constable Defs.' Opp'n 1, Doc. No. 55.)

that slight inconvenience and expense would constitute an *undue* burden."[70]
Additionally, Defendants contend Ms. Cordero "waived any claim that traveling to Salt
Lake City is an undue burden" by agreeing "on two separate occasions, to appear in
Salt Lake City, for an in-person deposition."[71]  Finally, Defendants note Ms. Cordero's
counsel has traveled to Salt Lake City for other depositions in this case and other
cases, which demonstrates he "is more than willing to travel for in-person depositions
when he believes it is to his advantage."[72]

*Analysis*.  "Usually, the party noticing the deposition has the right to choose its
location."[73]  But under Rule 30 of the Federal Rules of Civil Procedure, the court may
order "that a deposition be taken by telephone or other remote means."[74]  "[W]hether to
permit a remote deposition is a heavily fact dependent inquiry," and courts have
"substantial discretion" to determine the manner of deposition.[75]  For example, courts
have found remote depositions appropriate during a global health pandemic or when the

---

[70] (Law Firm Defs.' Opp'n 14, Doc. No. 54.)

[71] (*Id.* at 15.)

[72] (*Id.*)

[73] *O'Neil v. Burton Grp.*, No. 2:09-cv-00862, 2012 U.S. Dist. LEXIS 163314, at *5 (D. Utah Nov. 14, 2012) (unpublished); *see also Paul v. Wyo. Auto Invs.*, No. 19-CV-251, 2021 U.S. Dist. LEXIS 254852, at *9 (D. Wyo. Apr. 30, 2021) (unpublished) ("It is the general rule that a plaintiff must make themselves available for deposition in the district where they brought suit.").

[74] Fed. R. Civ. P. 30(b)(4).

[75] *Quarrie v. Wells*, No. 17-350, 2020 U.S. Dist. LEXIS 153376, at *3 (D.N.M. Aug. 24, 2020) (unpublished) (internal quotation marks and citations omitted).

deponent is legally barred from entering the United States.[76]  "However, courts have required in-person rather than remote depositions where the deponent is a 'key witness' whose credibility is at issue—particularly where the deponent is a named party to the case."[77]  This is because "[r]emote depositions have certain disadvantages," including "limitations on counsel's ability to assess demeanor and credibility."[78]

Although an in-person deposition may be difficult for Ms. Cordero, it is appropriate here.  This is not a case where a global pandemic presents a significant health risk to all parties or where the deponent is legally barred from entering the country.  Ms. Cordero resides in Vernal, less than a three-hour drive from Salt Lake City.  Moreover, Ms. Cordero is both the instigator of this suit and a key witness in this case whose credibility is at issue.[79]  Deposition travel costs "are a routine feature of civil

---

[76] *See In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 577–79 (S.D.N.Y. 2020) (permitting remote depositions because the COVID-19 pandemic presented a "serious health risk" for "lawyers, witnesses, deposition staff, and all of their families"); *Rouviere v. Depuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574–75 (S.D.N.Y. 2020) (same); *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 1:17-cv-00816, 2017 U.S. Dist. LEXIS 233395, at *4 (S.D.N.Y. Nov. 22, 2017) (permitting remote depositions where the deponents lived in Laos and were "legally barred under U.S. immigration law from reentering the United States"); (*see also* Pl.'s Mot. 5–7, Doc. No. 49 (citing *In re Terrorist Attacks*, *Rouviere*, and *Tangtiwatanapaibul*)).

[77] *InMoment, Inc. v. Mkt. & Op. Rsch. Int'l Ltd.*, No. 2:21-cv-00513, 2022 U.S. Dist. LEXIS 89840, at *5–6 (D. Utah May 18, 2022) (unpublished) (collecting cases).

[78] *Id.* at *6 (citation omitted); *see also L.D.M. v. LMH Health*, No. 20-2491, 2021 U.S. Dist. LEXIS 238320, at *9–10 (D. Kan. Dec. 14, 2021) (unpublished) (denying request for remote deposition for a "crucial" witness because "[a] significant amount of nonverbal information is gained through an in-person deposition and such information may not be as easily ascertained through a Zoom deposition").

[79] *See InMoment*, 2022 U.S. Dist. LEXIS 89840, at *5–6.

litigation, and they are not unreasonable or disproportionate given the damages [the plaintiff] seeks in this action."[80]  Defendants are entitled to depose Ms. Cordero in person.  Accordingly, Ms. Cordero's motion is denied to the extent she seeks an order compelling a remote deposition.

### ***Professionalism***

Next, a final reminder on professionalism is warranted.  Ms. Cordero's counsel, Eric Stephenson, attacked Defendants' counsel personally throughout his briefing on these motions (and in the briefing on another motion for protective order the Law Firm Defendants filed[81]).  Specifically, Mr. Stephenson

- called opposing counsel's arguments "disingenuous,"[82] "nonsense,"[83] "meaningless,"[84] "callous[],"[85] "intellectually dishonest,"[86] "extraordinary and

---

[80] *See id.* at *8; (*see also* Ex. A to Law Firm Defs.' Opp'n, Pl.'s Initial Disclosures, Doc. No. 54-1 at 26 (stating Ms. Cordero's compensatory damages could "reach well into the seven-figure range")).

[81] (*See* Defs. Olson Assocs., P.C., Randolph Chip Shaner, and N.A.R., Inc.'s Mot. for Protective Order, Doc. No. 51 (seeking a protective order preventing Mr. Stephenson from making unauthorized personal recordings of depositions); Mem. in Opp'n to Mot. for Protective Order, Doc. No. 57.)

[82] (Reply Mem. in Supp. of Mot. for Protective Order (Pl.'s Reply) 6, Doc. No. 58.)

[83] (*Id.* at 2.)

[84] (*Id.* at 6.)

[85] (*Id.* at 5.)

[86] (*Id.* at 7.)

baseless,"[87] "blatantly untrue,"[88] a "fundamental mischaracterization of the law,"[89] "legally meritless,"[90] and "empty of any true substance";[91]

- asserted the Law Firm Defendants' motions constitute "blatant judicial waste,"[92] a "bad-faith attempt to burden Plaintiff with frivolous litigation tactics,"[93] an "attempt to micromanage Plaintiff's counsel's work processes" with "no rational basis whatsoever,"[94] and "unwarranted meddling with Plaintiff's counsel's ability to effectively represent his client";[95]

---

[87] (Mem. in Opp'n to Mot. for Protective Order 1, Doc. No. 57.)

[88] (*Id.* at 3.)

[89] (*Id.* at 8.)

[90] (*Id.* at 10.)

[91] (Pl.'s Opp'n 1, Doc. No. 56.)

[92] (*Id.*; *see also id.* at 1 n.1 (asserting "Defendants' motion is especially wasteful"); Pl.'s Reply 3, Doc. No. 58 ("This argument by Defendants also illustrates the judicial waste Defendants already created by forcing Plaintiff to file this Motion in the first place."); Pl.'s Reply 4, Doc. No. 58 (arguing "Defendants are forcing motion practice").)

[93] (Mem. in Opp'n to Mot. for Protective Order 10, Doc. No. 57; *see also id.* ("Defendants' motion lacks any legal or factual basis, was filed without justification, . . . and serves only to harass and obstruct Plaintiff's ability to litigate this case efficiently and effectively.").)

[94] (*Id.* at 8–9.)

[95] (*Id.* at 8.)

- accused opposing counsel of engaging in "especially egregious" "coercion"[96] and having no "modicum of respect for a woman's private medical history";[97] and

- argued Defendants' counsel "need[s] to be reigned [sic] in"[98] and insisted the court "admonish [him] for his conduct."[99]

Mr. Stephenson's language towards opposing counsel is unacceptable.  It is hostile, discourteous, and uncivil.  All attorneys practicing in this court must comply with the Utah Standards of Professionalism and Civility.[100]  This includes treating "other counsel, parties, judges, witnesses, and other participants in all proceedings in a courteous and dignified manner,"[101] avoiding "hostile, demeaning, or humiliating words in written and oral communications,"[102] refraining from attributing "improper motives,

---

[96] (Pl.'s Mot. 4, Doc. No. 49; *see also* Pl.'s Opp'n 3, Doc. No. 56 (accusing Defendants' counsel of "especially egregious" "coercion"); Pl.'s Reply 2, 4, Doc. No. 58 (accusing Defendants' counsel of coercion).)

[97] (Pl.'s Reply 3, Doc. No. 58.)

[98] (*Id.*)

[99] (Pl.'s Mot. 4, Doc. No. 49; *see also* Pl.'s Opp'n 4, Doc. No. 56 (arguing the court should "admonish [opposing counsel] for his conduct").)

[100] DUCivR 83-1.1(d)(1).

[101] Utah Standards of Professionalism and Civility ¶ 1, https://www.utcourts.gov/en/about/courts/appellate-courts/civility.html [https://perma.cc/4LQV-QPE8].

[102] *Id.* ¶ 3.

purpose, or conduct" to other counsel without factual basis,[103] and most importantly,

"exhibit[ing] courtesy, candor, and cooperation."[104]

The assertions identified above violate these standards.  In other cases involving

the same counsel, the court has repeatedly emphasized counsel's obligation to comply

with the Utah Standards of Professionalism and Civility—based on similar behavior.[105]

Given Mr. Stephenson's violation of these standards despite repeated warnings,

remedial action is necessary.  Accordingly, by May 20, 2025, Mr. Stephenson must read

in full the Utah Standards of Professionalism and Civility.[106]  He must then submit a

signed certification noting the date on which he read them in full and attesting he will

---

[103] *Id.*

[104] *Id.* at Preamble; *see also id.* ("Conduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully, and efficiently.").

[105] *See* Docket Text Order, Doc. No. 20, *Hernandez v. Kolkman*, No. 2:23-cv-00772 (D. Utah Mar. 22, 2024) ("The communications referenced in the briefing also raise questions about counsels' compliance with the Utah Standards of Professionalism and Civility.  Counsel are required to comply with both the letter and intent of these standards—and are expected to do so at every step and in each communication going forward."); *Hernandez v. Kolkman*, No. 2:23-cv-00772, 2024 U.S. Dist. LEXIS 146946, at *12 (D. Utah Aug. 16, 2024) (unpublished) ("It is apparent the parties to this case have a history litigating against each other, leading to bad feelings that are now bleeding over into this case.  All counsel in this case must avoid discourteous behavior, personal characterizations, impugning motives, and obstructing or impeding any aspect of this case.  Anything less than full compliance with the Utah Standards of Professionalism and Civility risks sanctions—particularly now, after this second warning.").

[106] *See* Utah Standards of Professionalism and Civility, https://www.utcourts.gov/en/about/courts/appellate-courts/civility.html [https://perma.cc/4LQV-QPE8].

comply with the Utah Standards of Professionalism and Civility in both letter and spirit. Further violations will result in sanctions, including potential referrals to the Utah Office of Professional Conduct, monetary fines, and mandatory professionalism training.  Mr. Stephenson is expected to treat opposing counsel with respect at all times—in communications, depositions, and written memoranda.

## CONCLUSION

As explained above, Ms. Cordero's motion[107] is granted in part and denied in part, and the Law Firm Defendants' motion[108] is granted.  The court orders as follows:

1. The Law Firm Defendants may disclose the records they obtained from NCC to qualified recipients (as defined by the SPO[109]) and they may use the documents during Ms. Cordero's deposition, subject to the terms of the SPO.

2. Ms. Cordero must make herself available for an in-person deposition.

3. The Constable Defendants may not question Ms. Cordero about her personal financial condition or the validity of the underlying debt during her deposition.

4. By May 20, 2025, Mr. Stephenson shall submit a signed statement attesting he has read and will comply with the Utah Standards of Professionalism and Civility.

---

[107] (Doc. No. 49.)

[108] (Doc. No. 50.)

[109] *See* SPO ¶ 6(a)(1)–(2) (defining "Qualified Recipients" to include "counsel of record for the parties in this action," "court reporters," and "persons operating video recording equipment at depositions").

5.  Where Ms. Cordero's motion is granted in part and denied in part, the parties

shall bear their own fees with respect to that motion.[110]  As to the Law Firm

Defendants' motion, although the motion is granted, where both parties were

uncertain of the applicability of the NCC's confidentiality stamp and the SPO, the

parties shall bear their own fees with respect to that motion.[111]  This constitutes a

fair apportionment.

DATED this 13th day of May, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[110] *See* Fed. R. Civ. P. 37(a)(5)(C) (providing a court "may" apportion reasonable expenses where a motion for protective order is granted in part and denied in part).

[111] *See* Fed. R. Civ. P. 37(a)(5)(A)(iii) (providing that when a motion for a protective order is granted, the court "must not" award expenses if "other circumstances make an award of expenses unjust").